**STATE of Missouri, Respondent,**

v.

**James E. MAYNARD, Appellant.**

**No. WD 36556.**

Missouri Court of Appeals,
Western District.

April 29, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 26, 1986.

Application to Transfer Denied
Sept. 16, 1986.

David Fry, Asst. Public Defender, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before CLARK, C.J., and SHANGLER and KENNEDY, JJ.

CLARK, Chief Judge.

James E. Maynard was convicted by a jury of forcible rape, first degree burglary and armed criminal action. On this appeal, he raises six points of trial error, two of which question the sufficiency of the state's evidence. The facts of the case must therefore be briefly stated.

On August 2, 1983, at approximately 4:00 a.m., the female victim was awakened by the presence of a man in her apartment armed with a knife and standing by her bed. Entry had been gained by removing security bars and a ventilating fan from a living room window. The assailant held a knife to the victim's neck and forced her to engage in multiple acts of intercourse. Following the assault, the intruder took the victim's purse and left.

On August 4, 1983, Maynard was arrested on a sexual offense charge unrelated to the present case. At the time, appellant was living in the home of friends, Kenneth and Cheryl Smith. Some three weeks after Maynard's arrest and while the investigation and presentation against him of charges in the other case were in process, the Smiths discovered and delivered to the police a purse identified as the property of the victim in this case. They stated it had been found under a couch in the Smith apartment where Maynard slept. They also reported that on August 3, 1983, Maynard, who was unemployed, had displayed a substantial quantity of money which he said was given him by his mother or grandmother. With this evidence, the police arranged a lineup in which the victim in this case identified Maynard as the person who

had entered her apartment and committed the assault. Maynard was thereafter charged with the offenses in this case.

On the foregoing evidence and the in-court identification of Maynard by the victim, the jury returned verdicts of conviction on the three counts charged. The trial court imposed consecutive sentences of life, 40 years and 15 years after finding Maynard to be a prior offender under § 558.-016, RSMo.Cum.Supp.1984.

In his first point, Maynard contends the trial court erred in overruling his motion for dismissal based on denial of a speedy trial. He says that the time which elapsed between the date of arraignment, November 7, 1983, and the date of trial, September 11, 1984, exceeded the permissible time under § 545.780, RSMo. 1978 (now repealed).

The issue of speedy trial was first raised by appellant in an oral motion presented on the first day of trial. At that time, the statute on which the motion was based was no longer in effect, having been repealed some three months earlier. Section 545.-780, RSMo.Cum.Supp.1984, effective June 7, 1984. In *State v. Allen*, 669 S.W.2d 569, 570 (Mo.App.1984), it was held that failure of the defendant to move for dismissal under § 545.780, RSMo.1978 prior to trial constituted a waiver of the rights to dismissal under the statute. It would also seem to follow that a failure to raise the statute as a basis for dismissal until after the statute had been repealed would, pro tanto, constitute a waiver of its provisions.

■ Appellant recognizes this deficiency in his position but argues that a denial to him of the protection of the statute in effect when the subject crimes were committed would amount to the unconstitutional imposition of an ex post facto law. If it be assumed for the sake of the point that appellant had cause for dismissal of the charges against him because a speedy trial was not provided and that such cause ripened before the then existing statute was repealed, there is yet no ex post facto violation under the facts here. In order for a law to be deemed ex post facto, it must either denounce acts as criminal which did not constitute crimes when they were committed or, it must enlarge the penalty for crimes after the date of the violation. *State v. Davis*, 645 S.W.2d 160 (Mo.App. 1982). The repeal of the former "Speedy Trial Act" effective in June, 1984 did neither in appellant's case. The statute did not affect the substantive elements of a criminal offense or alter the penalties. It was merely a procedural enactment which was subject to amendment or repeal without ex post facto consequence.

■ Despite the foregoing, however, Maynard did not show himself entitled to relief under the former § 545.780, RSMo. 1978 even had the statute remained in effect through the date of trial. If a defendant seeks to obtain the remedy of dismissal under the statute which previously set the arbitrary limit of 180 days, he has the burden of showing not only the passage of more than 180 days but the further burden of showing that the failure to bring him to trial within that time was "occasioned" by the state. *State v. Franco*, 625 S.W.2d 596, 601 (Mo.1981). In this case, the appellant's attorney merely asserted that the passage of more than 180 days since arraignment entitled Maynard to dismissal. No showing whatever was made as to the reasons for the delay. In fact, the trial judge appropriately observed that the delays were the result of repeated continuance requests by appellant. Examination of the record in the case confirms the accuracy of the statement. The court correctly denied the dismissal motion.

■ In his second point, appellant challenges the finding of prior offender status and the imposition of sentence by the court under § 558.016, RSMo.Cum.Supp.1984. The state had charged Maynard as a prior offender by amended information and in support of that charge introduced the following proof at trial. A certified copy of sentence and judgment from the circuit court of Boone County was offered showing that Jim Maynard had been convicted of first degree robbery in December, 1976.

The records from the Missouri Division of Corrections were also produced showing the admission of Jim Maynard into custody under a sentence of robbery from Boone County. Those records included a photograph of Jim Maynard, a detailed physical description and the date of birth. Appellant contends the evidence was insufficient to prove that he and Jim Maynard were one and the same person.

It is true that when the name which appears in a prior conviction record is at variance with the name of the defendant on trial, some additional evidence is generally required to prove the identity of the defendant on trial with the person previously convicted. *Ballard v. State,* 615 S.W.2d 589, 592 (Mo.App.1981). Although the difference between Jim and James was probably not significant in this case so as to require additional proof of common identity, the state did offer sufficient proof. The birthdays of "Jim" and "James" were the same and the physical characteristics were also the same. In addition, the trial court had before it a photograph of Jim Maynard which was compared by the court with the actual appearance of appellant in the courtroom. This evidence was ample basis to support the finding by the court that appellant was the prior offender, Jim Maynard, who had been convicted and sentenced from Boone County.

■ Appellant's third point, in a somewhat involved proposition, argues that his motions to suppress the victim's identification of her assailant should have been sustained. An understanding of the sequence of events leading to the charge filed against Maynard for this crime is necessary to understand the claim of error. As noted at the outset of this opinion, Maynard was taken into custody on August 4, 1983, two days after the crime charged in this case was committed. That arrest, however, was for another crime charged in an information filed August 19, 1983. Counsel was appointed for Maynard in that case August 22, 1983.

Suspicion first centered on appellant as the perpetrator of the rape charged in this case when, on August 27, 1983, the victim's purse was delivered to the police by Smith, the person at whose home Maynard had resided. The police then arranged a videotaped lineup which Maynard participated September 19, 1983. The videotape was viewed by the victim two days later, she identified Maynard and on November 7, 1983, the information in this case was filed. At the time of the videotape lineup, appellant was represented by appointed counsel in the earlier and unrelated charge filed against him August 19, 1983. The gist of appellant's point with regard to the lineup identification in this case is that his Sixth Amendment right to counsel was violated when the lineup was conducted without the presence of the attorney who represented him in the previously charged crime.

As to the subject offense and prosecution, the lineup conducted September 19, 1983 was not a critical stage of the prosecution at which presence of counsel was constitutionally required because it was held prior to commencement of formal prosecution. *State v. Quinn,* 594 S.W.2d 599, 604 (Mo. banc 1980). Maynard asserts, however, that his pending charge in the case filed August 19 was sufficient to trigger his right to counsel in the present case, first because both cases involved charges of rape and they were therefore related and, second because the state knew of counsel's representation of Maynard in the first case but intentionally excluded him from participation in the September 19 lineup.

There is no factual basis for appellant's assumption the two rape prosecutions were related. The rapes occurred at different times and in different places and there was no attempt by the state to advance a prosecution theory of a common scheme or plan. The record also discloses no reference in the prosecution of this case to any other rape committed by appellant or of any link between the two separate trials. A series of decisions have refused to extend the constitutional protection of right to counsel at lineup in situations where the accused is in custody formally charged with other of-

fenses and is then required to participate without counsel in a lineup conducted for identification in a crime with which he has not been charged. *State v. Abram,* 632 S.W.2d 60 (Mo.App.1982); *State v. Montgomery,* 596 S.W.2d 735 (Mo.App.1980); *State v. Mason,* 588 S.W.2d 731 (Mo.App. 1979).

Assuming for the sake of the point that the officers who conducted the September 19 lineup were aware of the other rape charge pending against Maynard, as they undoubtedly were, and that they also knew that Maynard was represented by an attorney in that case, it may well be argued that the lineup was intentionally conducted without notice to the attorney and with the purpose to exclude him. Appellant says this amounts to a police conspiracy purposely orchestrated by the state to violate appellant's right to counsel. Even accepting the premise of a purposeful exclusion of the attorney, which is at best no more than an inference, the contention fails because it rests on the same faulty claim raised above that there was a constitutional right to counsel. In this case, unrelated to the previous case in which Maynard had appointed counsel, there was no Sixth Amendment violation because Maynard had not yet been charged. *State v. Wilson,* 651 S.W.2d 512 (Mo.App.1983). Absent a right to an attorney, it is immaterial whether the police action was intentional or inadvertent.

■■■■ A further basis exists to deny appellant's claim of error. If an accused successfully challenges a lineup identification proceeding, the consequence is exclusion of the witness's identification made at the lineup and to place in question the admissibility of an in-court identification. The witness may still identify the accused in court despite an invalid lineup if the identification is based on observations independent of the lineup. *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); *Gilbert v. California,* 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967). In the present case, although the lineup videotape was admitted in evidence, the victim was not asked and she did not testify as to an identification of Maynard made at the lineup. She did make an in-court identification but the evidence was that her testimony was not based on the lineup but on her observation of Maynard during the commission of the offense. In consequence, even if the lineup was improperly conducted in the absence of counsel for appellant, there was no error because constitutionally protected matter was not received.

■■■■ Next, appellant raises the frivolous claim that the elements of the crime of rape were not proved because there was no evidence he and the victim were not married. It is not necessary in a rape prosecution that there be direct evidence proving the accused was not married to the victim. Like other facts in the case, the marital status may be proved by circumstantial evidence. *State v. Thurber,* 625 S.W.2d 931, 933 (Mo.App.1981). Here, the evidence was that the victim and Maynard resided at different locations, they have different surnames, the victim was referred to during trial as a single woman, during the commission of the crime, Maynard asked the victim her name and where she worked and, the process of identification of the suspect by the victim was only by physical description not by name. Quite obviously, the appellant and the victim not only were not married but were strangers to each other prior to the commission of the crime.

■■■■ In his fifth point, Maynard says the trial court erred in permitting the rape victim to testify that she had not had consensual intercourse within the ten days preceding the assault. He says the evidence was irrelevant to any issue in the case and, in any event, was inadmissible under the rape shield statute, § 491.015, RSMo.1978. The primary obstacle to appellant's claim is that the point was not preserved by a timely objection at trial. The particular question and the answer which placed before the jury the matter in question were completed before appellant voiced an objection. After a witness has answered the question, assuming an opportunity to object before

answer was available, an objection is not timely and presents nothing for appellate review. *State v. Moss,* 700 S.W.2d 501, 503 (Mo.App.1985).

 Reviewing the point, ex gratia, it is found to be without merit. The evidence was relevant to prove Maynard's guilt under the following facts. When the victim was examined after the attack, seminal fluid was found in her vaginal area. The seminal fluid was identified as having come from a secretor with Type A blood. Thirty-two percent of the male population are of this type and appellant was shown to be a Type A secretor. Thus, the fact that the victim had not engaged in sexual intercourse for ten days prior to the rape tended to show, first that the origin of the semen was recent thereby corroborating the victim's account of a sexual assault as reported. Second, the exclusion of any other sexual activity by the victim coupled with the seminal fluid analysis tended to corroborate the victim's identification of Maynard as the assailant.

The objection based on the rape shield statute was that prior sexual conduct of the complaining witness is admissible only to show alternate sources of semen, not the lack of an alternate source. Maynard claimed the benefit of the statute to exclude the testimony of the witness unfavorable to his defense. The opinion in *State v. Brown,* 636 S.W.2d 929, 933 (Mo. banc 1982), *cert. denied,* 459 U.S. 1212, 103 S.Ct. 1207, 75 L.Ed.2d 448 (1983) suggests that an argument such as appellant presents here would be rejected on the policy ground of legislative purpose. The statute was not intended to provide a shield to defendants accused of sex crimes. The statute " * * * reflects a major public policy decision that 'victims' not be subjected to unwarranted psychological and emotional abuse." *Brown, supra* at 933.

Irrespective of whether the evidence of the victim in this case was otherwise subject to the qualifications of the rape shield statute, the decision by the trial court to admit the victim's testimony regarding the subject may be sustained under the discretionary authority of the court to admit relevant evidence. Section 491.015.2, RSMo. 1978 provides that such evidence may be admitted. The facts of this case amply justify the trial court's decision that the testimony was relevant for the purposes of proof reviewed above.

 In his sixth and final point, appellant argues that he was entitled to acquittal on the charge of armed criminal action because the state failed to prove the crime was committed by use of a deadly weapon. He says that the testimony showed only the use of a knife, the length of which was not accurately proved. Because, under § 571.010(9), RSMo.Cum.Supp.1984, a pocket knife with a blade no more than four inches long is not a deadly weapon as specified in § 556.061(10), RSMo.Cum.Supp. 1984, he says the proof failed on this count even though the victim testified that the assailant forced her compliance by holding the knife to her throat.

The testimony on the subject by the victim identified the weapon as a very long knife with a "very dagger-type blade" a "very big blade" measuring four to six inches. On cross-examination, she acknowledged that the blade could have been as short as four inches but no less. The facts in this case are virtually identical to those in *State v. Martin,* 633 S.W.2d 80 (Mo.1982) in which the rape assailant was armed with a knife, "seven to eight inches in length with a four to five inch blade." The court there noted that a deadly weapon is defined under § 556.061(9), RSMo.1978 to include a dagger and that a knife is in some circumstances also properly described as a dagger.

Appellant erroneously assumes that the specification of deadly weapon employed in the armed criminal action statute, § 571.015, RSMo.1978, includes the term knife and thus is limited by definition of the latter term in § 571.010(9), RSMo.Cum. Supp.1984. An element of the offense of armed criminal action is the use of a dangerous instrument or deadly weapon. Because neither of those terms is defined in that section, it is to § 556.061(10), RSMo.

Cum.Supp.1984 that recourse must be had to determine what constitutes a deadly weapon. That statute does not use the word knife, except for switchblade knife not applicable here, but does include a dagger. There is no limitation on the length of blade to qualify an instrument as a dagger. As the opinion in *Martin* notes, a dagger is a short weapon with a sharp point used for stabbing.

Whether the weapon in this case had a blade of four inches or six is immaterial because § 571.010(9), RSMo.Cum.Supp. 1984 relied on by appellant is not applicable as a definition bearing on an element of the offense of armed criminal action. The weapon as described by the victim qualified as a dagger and thus the evidence was sufficient to permit the jury to convict appellant of armed criminal action.

The judgment is affirmed.

All concur.