**STATE of Missouri, Respondent,**

**v.**

**Michael JOHNSON, Appellant.**

**Michael Leroy JOHNSON, Appellant,**

**v.**

**STATE of Missouri, Respondent.**

**No. WD 43759.**

Missouri Court of Appeals, Western District.

Feb. 9, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1993.

Application to Transfer Denied May 25, 1993.

Susan L. Hogan, Appellate Defender, Kansas City, for appellant.

William L. Webster, Atty. Gen., Joan F. Gummels, Asst. Atty. Gen., Jefferson City, for respondent.

Before ULRICH, P.J., and SHANGLER and FENNER, JJ.

SHANGLER, Judge.

The defendant Michael L. Johnson appeals from convictions on two counts of rape [§ 566.030, RSMo 1986] and two counts of sodomy [§ 566.060, RSMo 1986] for which Johnson was sentenced to four consecutive terms of fifteen years imprisonment. The defendant also appeals from the denial of his motion to vacate judgment and sentence under Rule 29.15. The appeals were consolidated for review.

The complaining witness as to Counts I and III was J.G., then age 7, and the complaining witness as to Counts II and IV was C.R., then age 7.

During the summer of 1988, J.G. and sisters M. and N. and a brother lived with their mother in Pleasant Hill, Missouri. C.R. often visited J.G. and M. at their house when in Pleasant Hill to see her grandmother. The defendant Johnson and his wife were uncle and aunt to the victim J.G. and her sisters and brother. They lived in the same house in Pleasant Hill.

Throughout the summer, Johnson remained at home alone with the children while his wife worked. According to J.G.

and C.R., Johnson often took J.G., her sister M., and C.R. to his bedroom and sexually assaulted them, including inserting his penis into their vaginas and anuses, and placing his mouth and hands on their vaginas. The sister, M., testified without objection that Johnson engaged in such activity with her and with another girl, K.B. M. testified that she witnessed some of the activity through the bedroom window. J.G. testified, also without objection, that she saw Johnson commit sexual acts with her sister, M.

There was testimony of specific instances of sexual assaults by Johnson on the girls. One instance was after J.G. left the bathtub wrapped in a towel, when Johnson took her into the living room and placed his mouth on her vagina. J.G. also witnessed Johnson touch C.R.'s vagina with his penis and have intercourse with her sister, M. C.R. testified that Johnson instructed her to lie on the bed and remove her clothes. He then touched her vagina with his hand and mouth and raped her and then penetrated her anus with his penis. Johnson told her they were playing games. C.R. also observed Johnson in the bedroom insert his penis into J.G.'s vagina. M. was also sodomized by Johnson in his bedroom. She witnessed Johnson have anal intercourse with her sister, J.G., and touch C.R.'s vagina with his penis.

C.R. was examined by Dr. Barbara Alphin for signs of sexual abuse. The examination indicated trauma to the genital area consistent with attempted penile penetration. There was an unusually large opening and whitish scar in the anus, injuries consistent with sodomy. Dr. Raymond Newman examined the genital area of J.C. and found vaginal irregularities consistent with sexual abuse.

Johnson testified in his defense. He denied that he engaged in sexual activity with any of the children. K.B. was called as a witness. She was the child that M., the victim J.G.'s sister, testified that Johnson engaged in sexual activity at the same time he did so with her. K.B. testified that Johnson never touched her vagina or anus, or "do anything bad" to her. She described that Johnson took her into the bedroom once, shut the door, and picked her up. She then kicked him between the legs because she thought Johnson was going to "[p]ut his penis in me," as she had seen him do to M., in her "behind." Johnson presented evidence through his wife. She testified that a headboard obscured the lower half of one of the windows in the bedroom, that the other window was too far from the ground for a child to be able to look through. She testified also that it was impossible to see through the keyhole on the bedroom door.

### The Direct Appeal

■ The first point on appeal, incorporated by reference from an earlier brief, argues that the trial court erred in permitting seven-year-old M., sister of the victim J.G., to testify. M. was not a victim of one of the charged crimes. Johnson acknowledges that "[t]he overwhelming body of case law in this state respecting this issue provides almost blanket deference to the trial judge's perception of the minor's competence to testify." *See, e.g., State v. Johnson,* 694 S.W.2d 490, 491[1, 2] (Mo. App.1985). The argument reminds us, nevertheless, that on appeal the court of review will examine both the voir dire of the witness as well as her actual testimony to assess whether the ruling by the trial court to allow the witness to testify was an abuse of discretion. *See K.S. v. M.N.W.,* 713 S.W.2d 858, 864 (Mo.App.1986).

■ Section 491.060, RSMo 1986, creates a rebuttable presumption that a child under ten years of age is incompetent to testify except as a victim of certain offenses. *State v. Feltrop,* 803 S.W.2d 1, 9[15, 16] (Mo. banc 1991). In order for a child under ten years of age to be determined competent to testify, the child must have (1) a present understanding of, or ability to understand upon instruction, the obligation to speak the truth; (2) the capacity to observe the occurrence about which testimony is being sought; (3) the capacity to remember that occurrence; and (4) the capacity to translate the occurrence into words. *Id.* at 10.

It is the argument that witness M. was "incapable of having just impressions or otherwise distinguishing fact from fantasy." For that reason, M. was not a competent witness under the statute and the trial court abused its discretion in allowing her testimony. A new trial should have been ordered to correct the prejudice from that error. The defendant bases that conclusion on chosen testimony excerpts: "Would you get in trouble if you told a lie?" To which, after some halting, M. replied, "I don't know." Then, to the question: "Do you think you might get in trouble if you told a lie," M. answered, "I don't know," and that she did not understand that she could be punished for telling a lie.

These answers to the inquiry chosen by the prosecution to qualify the witness, the argument goes, bespeak a present understanding of the obligation to speak the truth, and so render her incompetent under the scheme of § 491.060, RSMo.

■ The determination of whether or not a child witness exhibits the four qualifying factors for competency under *Feltrop* may rest on the examination by the trial court or on questions of the prosecutor and trial counsel. *State v. O'Neal*, 651 S.W.2d 634, 636[5] (Mo.App.1983). The inquiry by the prosecutor and the responses by the witness make it evident that M. had the ability to understand the obligation to tell the truth:

Q: [by Ms. White]: [M.], do you promise to tell the truth today?

A: [by M.]: Yes

Q: Everything you say will be the truth?

A: Yes.

Q: Do you understand if you told a lie and some lady found out you told a lie, like perhaps your mother, that you would get in trouble for telling a lie?

A: I don't understand.

Q: If you got in trouble—Have you ever got [sic] in trouble for telling—

A: Yes.

Q: —a lie?

A: Yes.

Q: Okay. Could you tell the jury what you said and what you got in trouble for?

A: I never got in trouble for a lie.

Q: You never told a lie that you can remember that you got in trouble for?

A: I haven't remembered a lie.

Q: But if you told a lie, like if you told your mom that J. had hit one of the twins, and J. got in trouble for hitting one of the twins, and then your mother found out that [J.G.] had not hit one of the twins, would you get in trouble?

MR. WHITE [Defense Counsel]: Your Honor, I'll respectfully object to that hypothetical. It's simply not analogous to the case at hand.

THE COURT: Overruled.

Q: [BY MS. WHITE]: All right. Would you get in trouble?

A: Yeah.

Q: You would get in trouble, and that would be a lie that you got in trouble for, wouldn't it?

A: Yes.

Q: Okay. Once again, do you promise to tell the truth here today; everything you tell this jury will be the truth?

A: Yes.

This full context tends to explain and complete her prior answers, those the defendant's argument cites, to mean that she did not know what the consequences of lying are because she had not lied. The defendant continues to argue nevertheless that the inability of the witness, M., to understand the obligation to tell the truth, and to tell "fact from fiction" is confirmed by the testimony of K.B. M. testified that she witnessed the defendant Johnson do the "same thing" to K.B. as he had to her, to her sister, J.G. and to the other victim, C.R. It was K.B.'s testimony, however, that Johnson never touched her vagina or anus with his penis or hand. Johnson did take her into the bedroom once and shut the door, and then picked her up. K.B. then kicked him "between the legs," because she thought he was going "to put his penis in me." K.B. then said that she had seen Johnson on the bed, through the key-

hole to his bedroom, put his penis in M.'s "behind."

This episode notwithstanding, the entire range of her testimony demonstrated an ability to recall and tell of the events that she experienced or observed during the summer of 1988 while she lived in the same household with Johnson. These observations and narrations were consistent with the testimony of the other witnesses as to the same events, and so attest to their truthfulness. *State v. Dunn*, 731 S.W.2d 297, 301[5] (Mo.App.1987). In every other respect, the testimony of witness M. corroborated that of the victims, J.G. and C.R. concerning the rapes and sodomies inflicted by Johnson. They all agree that the sexual assaults occurred during the daytime, when Mrs. Johnson was at work. They agree also that he assaulted them individually in the bedroom; that he used vaseline for anal intercourse; that he penetrated both their vaginas and anuses; and that he touched their vaginas with both his mouth and hands.

The requirements of § 491.060 to qualify M. as a competent witness were satisfied. It was not an abuse of discretion for the trial court to receive her testimony.

■ The other point on the direct appeal of the convictions contends that it was error to submit the *reasonable doubt* instruction on the model of MAI–CR3d 302.04. It complains that the use of the phrase "firmly convinced" of the defendant's guilt in the definition of *reasonable doubt* unconstitutionally lowers the prosecution's burden of proof in a criminal case. That complaint, so often repeated, has been refuted time and again by our decisions. *State v. Twenter*, 818 S.W.2d 628, 634 (Mo. banc 1991). It is, once again, denied.

### *Appeal from Order Denying Rule 29.15 Motion*

■ It is the contention that the order of the motion court denying the Rule 29.15 motion was clearly erroneous. The motion alleged ineffective assistance of counsel in several particulars.

The issues were tried and adjudicated on the First Amended Application for Post-

conviction Relief. The trial court heard evidence, entered findings of fact and conclusions of law and denied relief. The prosecution contends that the adjudication on the merits notwithstanding, Johnson was procedurally barred from raising the post-conviction claims since his original *pro se* motion, while timely filed, was unsigned and unverified and thus failed to invoke the jurisdiction of the circuit court. The court, however, upon the filing of the *pro se* motion, appointed the public defender to represent Johnson and granted counsel additional time under Rule 29.15(f) to file an amended motion. A timely amended motion, duly signed and verified, was filed.

*Wilson v. State*, 813 S.W.2d 833 (Mo. banc 1991) posed as the question for decision: "Whether the motion court had jurisdiction over Wilson's post-conviction proceedings when a timely filed, properly verified, amended motion was filed subsequent to the filing of an unverified *pro se* motion." The court answered:

Because the sole deficiency in the *pro se* motion, the absence of verification, was remedied by a timely filed, verified, amended motion that presented the claims litigated in this proceeding, the purpose of the verification requirement was satisfied in this case.

See *Kilgore v. State*, 791 S.W.2d 393, 395 (Mo. banc 1990). This Court finds that the motion court had jurisdiction to proceed.

*Id.* 813 S.W.2d at 834.

The *pro se* Rule 29.15 motion was filed by Johnson on Criminal Procedure Form Number 40 prescribed by the rule. That form instructs that the motion "shall be in writing, signed by the movant and verified [notarized] ..." It distinguishes between signature and verification, and requires them both. See *Malone v. State*, 798 S.W.2d 149, 150[1] (Mo. banc 1990). It is the absence of verification that *Wilson* holds may be remedied by a timely filed, verified, amended motion. The prosecution argues that Johnson's *pro se* motion was without signature as well as verification and so cannot be remedied by an amended

motion under *Wilson.* In fact, the signature, "Michael L. Johnson," does appear on the Form 40 motion, but immediately beneath, rather than within, the space marked "Signature of Movant."

We conclude that only the verification was lacking in the *pro se* motion, and that the deficiency was remedied by a timely filed, verified, amended motion. We determine that the motion court had jurisdiction to proceed, as do we. *Wilson v. State,* 813 S.W.2d at 834[1]; *see also State v. Ojeda,* 814 S.W.2d 9, 11[2] (Mo.App.1991); *State v. Kumming,* 812 S.W.2d 571, 572[2] (Mo. App.1991); *Phelps v. State,* 827 S.W.2d 742, 744[2] (Mo.App.1992).

█ The post-conviction amended motion of the defendant Johnson alleged numerous particulars of ineffective assistance of counsel. The court adjudicated and entered findings as to each contention. On this appeal, Johnson complains that the denial of relief for ineffective assistance of counsel was clearly erroneous, and gives five grounds: (1) using K.B. as a witness; (2) failure to object to evidence regarding sexual activity between Johnson and M.; (3) failure to introduce evidence that the children were not fearful of Johnson until immediately before trial; (4) failure to present into evidence photographs that depicted Johnson's bedroom window; (5) failure to present evidence that the children had been caught viewing adult videos. The first ground, that trial counsel was ineffective in the use of K.B. as a hostile witness in that the testimony "opened the door for the state to further emphasize the testimony of the children under the guise of rehabilitation," was rejected by the trial court by the finding that the decision was a matter of trial strategy. M. had testified that she had witnessed Johnson do the "same thing" to K.B. as he had done to herself, her sister and to the other victim, C.R. K.B. was called to refute M., and, indeed, did so. That such testimony gave the occasion to repeat the testimony of the other children concerning Johnson's antics does not undermine the presumptive validity of that choice of witness as a trial strategy. *Hannah v. State,* 816 S.W.2d 1, 4[7, 8] (Mo.

App.1991). That finding rests on substantial evidence and is not clearly erroneous.

█ The court's finding as to ground (2), that the failure of counsel to object to testimony regarding molestation for which Johnson was not tried was trial strategy, and was in any event relevant as probative of common scheme or plan, rests on substantial evidence and is not clearly erroneous. The failure to object to certain evidence does not usually amount to ineffective assistance of counsel unless it results in deprivation of a fair trial. *Burton v. State,* 817 S.W.2d 928, 930[5] (Mo.App. 1991). The conclusion of the trial court that the probative effect of the evidence outweighed any prejudicial effect and so was admissible to prove common scheme or plan is not clearly erroneous.

█ The court's findings as to ground (3) that the failure of counsel to present evidence that the children were not fearful of Johnson until immediately before trial, and as to ground (5) that the failure of counsel to present evidence that the complainants had viewed adult videos, were trial strategy, are not clearly erroneous. The court's finding as to ground (4) that both the relevancy and foundation of photographs of Johnson's bedroom were "highly speculative," and that the decision not to attempt to introduce them was trial strategy rests on substantial evidence and is not clearly erroneous.

The order denying relief to Johnson on the Rule 29.15 motion is affirmed.

All concur.