STATE of Missouri, Plaintiff–
Respondent,

v.

James CHOWNING, Defendant–Appellant.

and

James CHOWNING, Movant–Appellant,

v.

STATE of Missouri, Respondent.

Nos. 17392, 18461.

Missouri Court of Appeals,
Southern District,
Division 2.

Nov. 30, 1993.

Raymond L. Legg, Office of the State Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for respondent.

1. All references to statutes are to RSMo 1986, V.A.M.S.

2. All references to rules are to Missouri Rules of Court, V.A.M.R.

3. Defendant's counsel on this appeal is not the same attorney as his trial counsel.

GARRISON, Judge.

James Chowning (Defendant) was convicted by a jury of the Class A felonies of forcible rape under § 566.030,[1] sodomy and attempted sodomy under § 566.060, and armed criminal action under § 571.015, receiving consecutive sentences totaling ninety years. His direct appeal from those convictions is Case No. 17392.

After being sentenced, Defendant filed a motion under Rule 29.15,[2] which was later amended by appointed counsel, alleging ineffective assistance of counsel.[3] He appeals the denial of that motion, after an evidentiary hearing, in Case No. 18461. These appeals were duly consolidated.

Defendant raises four points on this appeal: (1) there was no proof that a "deadly weapon" was used in the offenses as charged in the information; (2) the proof was insufficient to authorize the submission of the use of a "deadly weapon" in the verdict directing instructions; (3) the "reasonable doubt" instruction was improper; and (4) the motion court erred in denying his Rule 29.15 motion.

*FACTS*

The 62–year–old complaining witness (Victim) testified that on February 19, 1990, she was alone at home when she was awakened shortly after 1:00 a.m. by Defendant who had one knee on her bed and a knife against her throat. According to her testimony, Defendant told her that he had to kill her or her son, that he had left a note in her son's adjoining bedroom,[4] that they were going to party all night, and that she was the last woman he would be with before he went to the penitentiary. She then proceeded to describe multiple events of sexual intercourse and sodomy, including oral sex and attempted anal sex, lasting until almost 5:00 a.m. During these events, according to the Victim, Defendant held a knife against her throat

4. The Victim's son had given a statement to law enforcement authorities implicating Defendant in a criminal case, and as a result was subpoenaed to testify at the preliminary hearing. After her son, accompanied by the Victim, appeared at the preliminary hearing, Defendant agreed to a plea bargain whereby he would plead guilty to a misdemeanor, agree to pay over $2,000 in restitution and costs, and serve fifteen days in jail.

and on one occasion placed it against the palm of her hand.

Defendant was arrested at his home approximately two hours later. While he was dressing, he placed a pocketknife on a table which was seized by the officers and subsequently introduced in evidence at trial. The Victim testified that she mostly felt the knife and "was too shook up to really observe what it looked like." When she held the pocketknife in her hand at trial, however, she testified that it felt like the size of the knife used by Defendant. Although the knife was introduced in evidence, there was no descriptive testimony concerning it other than the fact that it was a "pocketknife."

At trial, Defendant testified that he had been at the Victim's home the night of the alleged occurrence and they had engaged in consensual sex, as they had done on prior occasions. Following submission of the case to the jury, the jury requested and was furnished the pocketknife, along with other exhibits. Thereafter, the jury found Defendant guilty of all charges.

### CASE NO. 17392

Defendant contends, in his first point, that the trial court erred in sustaining the jury verdict and sentencing him because the evidence failed to prove the offenses charged. The information alleged that Defendant "displayed a deadly weapon in a threatening manner," in committing rape, sodomy and attempted sodomy, and that he committed armed criminal action "by, with and through the use, assistance and aid of a deadly weapon."

■ Defendant argues that the State did not charge him with using a "dangerous instrument" as defined in § 556.061(9) and failed to prove that the knife used in the alleged offense qualified as a deadly weapon. He contends that this deficiency requires a reversal.

Section 556.061(10) and MAI–CR 3d 333.-00, which was submitted to the jury, defines a deadly weapon as:

> ... any firearm, loaded or unloaded, or any weapon from which a shot, readily capable of producing death or serious physical injury may be discharged, or a switchblade knife, dagger, billy, blackjack or metal knuckles....

Defendant contends that because § 556.-061(10) specifically lists a switchblade knife and dagger in defining a "deadly weapon," not every bladed instrument capable of inflicting serious physical injury or death by cutting or stabbing falls within that classification. He reasons that the knife introduced in the instant case is not a deadly weapon because it qualifies neither as a switchblade knife nor a dagger. He notes that § 571.-010(17) defines a switchblade knife as a knife with a blade that opens from its handle or sheath through the application of pressure to a button on the handle, by the force of gravity or the application of centrifugal force. In arguing that the knife was not a dagger, he emphasizes § 571.010(9) which defines a "knife" as:

> ... any dagger, dirk, stiletto, or bladed hand instrument that is readily capable of inflicting serious physical injury or death by cutting or stabbing a person. For purposes of this chapter, "knife" does not include any ordinary pocket knife with no blade more than four inches in length....

Defendant's argument in this point is flawed in several respects.

In his brief, Defendant describes the knife introduced in evidence as a pocketknife with a blade less than four inches in length and points to the fact that § 571.010(9) excludes an instrument of that description from the definition of a "knife." From that he reasons that the knife introduced in evidence is not included in the definition of a "knife" and therefore could not qualify as a dagger.

■ The definition of "knife" found in § 571.010(9), however, does not purport to define what is or is not a "dangerous instrument" or "deadly weapon" and has no application to statutes using those terms. See State v. Schuler, 838 S.W.2d 19, 20 (Mo.App. 1992), and State v. Maynard, 714 S.W.2d 552, 557–558 (Mo.App.1986). The definition of a deadly weapon found in § 556.061(10) does not further define the term "dagger." A dagger has been judicially recognized as a short weapon with a sharp point used for

stabbing. *State v. Martin*, 633 S.W.2d 80, 81 (Mo.1982). There is no limitation on the length of the blade to qualify an instrument as a dagger and therefore a deadly weapon. *State v. Maynard*, 714 S.W.2d at 558.

The knife itself was introduced in evidence but it was not further described in the testimony other than as a "pocketknife." There was no evidence introduced concerning the dimensions of the knife, the size or length of the blade(s), the manner in which the knife operated, or whether the blades would retract and fold into the body.[5] The knife is not filed with this court, and from the trial transcript we are, therefore, unable to conclude that the jury, as a matter of law, would have been prevented from finding that the knife qualified as a switchblade or a dagger, and therefore as a deadly weapon.[6] As in *State v. Martin, supra*, the jury in the instant case found, after seeing the knife in question, that it was a deadly weapon as defined in the jury instruction which followed the definition contained in § 556.061(10).

■ Defendant, as the appellant, has the burden of demonstrating trial court error. *State v. Hooper*, 842 S.W.2d 889, 890 (Mo.App.1992); *State v. Hensley*, 770 S.W.2d 730, 731 (Mo.App.1989). This burden includes supplying the appellate court with a sufficient record to review the point. *State v. Shire*, 850 S.W.2d 923, 932 (Mo.App.1993). Exhibits are to be filed with the appellate court, Rule 30.05, and those not filed may be considered as immaterial to the issues. *Id.* Failure to supply a sufficient record to permit determination of the issues presented results in the appellate court being unable to determine if the trial court erred, *Arnold v. State of Missouri*, 789 S.W.2d 525, 526 (Mo.App.1990), and requires that the point be denied. *State v. Shire*, 850 S.W.2d at 932. Statements made in Defendant's brief or by counsel during argument concerning the dimensions of the knife which are not otherwise supported by the record are not evidence and cannot form the basis for error.

*See State v. Williams*, 652 S.W.2d 102, 115 (Mo. banc 1983); and *State v. Reynolds*, 837 S.W.2d 542, 545 (Mo.App.1992).

■ This point must be denied for another reason as well. Defendant claims there must be proof of the charge set out in the information, and a variance between the proof and the charge is error, citing *State v. Carter*, 559 S.W.2d 572, 573 (Mo.App.1977). That case also holds, however, that the variance must be prejudicial to the defendant. *Id.* at 574. Therefore, a variance between the charge and proof does not require a reversal unless it is material to the merits of the case and prejudicial to the defense. *State v. Jarrett*, 481 S.W.2d 504, 509 (Mo.1972); *State v. King*, 747 S.W.2d 264, 276 (Mo.App.1988). *See also State v. Doolen*, 759 S.W.2d 383, 385 (Mo.App.1988).

■ In the instant case, Defendant does not contend that the alleged variance between the information and proof prejudiced his defense. There is no contention that he was misled concerning the nature or identity of the instrument referred to in the information. In fact, Defendant filed a motion to suppress the very knife which was later introduced at trial. Use of a "dangerous instrument" in the commission of the offenses would authorize convictions for the same class felony and would carry the same punishment as would proof of the use of a "deadly weapon." §§ 566.030 and 566.060. It is conceded by the Defendant that the knife would constitute a "dangerous instrument" pursuant to the definition of that term contained in § 556.061(9). Therefore, Defendant knew that the evidence would include a knife which would qualify as a dangerous instrument and authorize conviction of a Class A felony carrying the same punishment as that which he received. Unlike *State v. Carter, supra*, relied on by Defendant, the evidence in the instant case did not require that he meet different proof from that of which he had notice.

---

5. By definition, however, a pocketknife has been described as a knife with a blade folding into the handle for being carried in the pocket. *State v. Weir*, 752 S.W.2d 461, 462 (Mo.App.1988).

6. We are not holding that under all circumstances a pocketknife is a dagger, but only that under the record presented to us we cannot make the determination of whether it was or was not in this case.

Additionally, it should be noted that the defense in the instant case was not that the instrument used did not qualify as a deadly weapon, but rather that the events of that evening were consensual. The fact that the defense, if believed by the jury, would be sufficient to refute the Class A felonies charged, regardless of whether a "dangerous instrument" or "deadly weapon" was used, can be considered on the issue of prejudice. *See State v. Simpson*, 846 S.W.2d 724, 728 (Mo. banc 1993), and *State v. Doolen*, 759 S.W.2d at 385. In addition to making no issue during the testimony concerning whether the knife was a deadly weapon, defendant made no argument to the jury on that point.

For the reasons stated, we find, under these particular facts, that there is no showing of error requiring a reversal. This point is, therefore, denied. We feel compelled to note, however, that it escapes us why the State would not, in such cases, include use of a "dangerous instrument" in the charge and avoid the potential problems apparent from this opinion. We also note that this opinion should not be interpreted as a license to omit "dangerous instrument" from an information where proof of a "deadly weapon" may be questionable, as this opinion is restricted to the particular facts of the instant case.

In Point II, Defendant argues that the trial court erred in submitting verdict-directing instructions modeled after MAI–CR 3d 320.02.1A, 320.08.1, 304.06, and 332.02 because they each require a finding that a "deadly weapon" was used. He also alleges error in the giving of an instruction modeled after MAI–CR 3d 333.00 defining "deadly weapon," which follows the definition of that term found in § 556.061(10). Defendant's theory is essentially the same as presented in Point I, i.e., that the evidence did not establish that the knife used in the commission of the alleged offenses qualified as a "deadly weapon" and, as a result, he argues that the instructions were not supported by substantial evidence.

It is true that instructions must be supported by the evidence, but a variance between the proof and an instruction must be prejudicial to warrant reversal. *See State v. Carter*, 559 S.W.2d at 574. As indicated in Point I, we are unable to conclude, from the record before us, that there was a variance between the charge of using a "deadly weapon" and the proof which was prejudicial to Defendant. The same reasoning applies to the alleged variance between the proof and the verdict-directing instructions requiring a finding of use of a "deadly weapon" and the instruction defining that term. As noted earlier in this opinion, the defense in the instant case was that the Victim consented, rather than that the instrument used did not qualify as a "deadly weapon." The fact that the defense is on a basis distinct from the subject of the alleged variance between the proof and an instruction is properly considered in determining whether prejudice occurred. *See State v. Wilson*, 554 S.W.2d 511, 515 (Mo. App.1977).

Defendant notes that his trial counsel did not preserve this point for appellate review and requests that we review the matter for plain error. A review under the plain error standard, however, places a much greater burden on a defendant. *State v. Mallory*, 851 S.W.2d 46, 48 (Mo.App.1993).

> An instructional error is seldom a plain error. Defendant must go beyond a demonstration of mere prejudice and establish such a misdirection of the jury as would cause manifest injustice or a miscarriage of justice.

*Id.* (quoting *State v. Walton*, 703 S.W.2d 540, 542 (Mo.App.1985)). In the instant case, we find no showing of error which would constitute a manifest injustice or miscarriage of justice and, therefore, deny Point II.

Defendant's last point on his direct appeal requests that we make a plain error review of the instruction given by the trial court defining "reasonable doubt" and which refers to the phrase "firmly convinced." MAI–CR 3d 302.04. Defendant contends that "firmly convinced" suggests a higher degree of doubt than is constitutionally required for acquittal.

The same challenge to this instruction has been repeatedly denied by Missouri appellate courts. *State v. Ervin*, 835 S.W.2d 905, 924 (Mo. banc 1992); *State v. Blankenship*, 830 S.W.2d 1, 13 (Mo. banc 1992); *State v. Twenter*, 818 S.W.2d 628, 634 (Mo. banc 1991);

*State v. Antwine,* 743 S.W.2d 51, 62–63 (Mo. banc 1987); *State v. Johnson,* 851 S.W.2d 547, 551 (Mo.App.1993); *State v. Bogard,* 836 S.W.2d 87, 89 (Mo.App.1992). This point, therefore, is denied.

## CASE NO. 18461

▮ Defendant appeals from the denial of his postconviction motion filed pursuant to Rule 29.15. He alleges that he was denied the effective assistance of counsel because his attorney stipulated with the State concerning testimony of the doctor who examined the Victim following the alleged attack. The stipulation which was read to the jury stated that if called, Dr. John Loney would testify, among other things contained in the stipulation, that he examined the Victim at 5:45 a.m. on the morning of the alleged attack, that she had tears in her eyes and her hands were shaking, and that he observed a small bruise on her right breast. It also provided that he would testify that his examination revealed multiple pinpoint-size bruises, called petechiae contusions, in her exterior and interior vaginal areas; that, in his medical opinion, those bruises were "consistent with recent forcible sexual intercourse"; and that "older women are especially susceptible to vaginal bruises from forcible sexual intercourse because of the decreased levels of estrogen in older women."

Defendant contends that his trial counsel failed to exercise the customary skill and diligence of a reasonably competent attorney under the same or similar circumstances by failing to adequately investigate to determine if the contents of the stipulation were accurate, and especially that portion saying that the bruises were consistent with forcible sexual intercourse. Defendant contends that Dr. Loney was actually unable to offer a medical opinion that the bruises were caused by forcible intercourse, and that he was prejudiced by the stipulation because it provided evidence of force, and his credibility was a central issue in the case.

In anticipation of the stipulation concerning Dr. Loney's testimony, Defendant's counsel obtained a stipulation from the State, which was read to the jury, that Dr. SoWash (an M.D. and professor at the University of Missouri) had reviewed Dr. Loney's medical report and would testify, if called, that, among other things, the injuries to the interior and exterior vaginal areas of the Victim would not necessarily have been caused by forcible sexual intercourse but could have been caused either by extended consensual sexual intercourse or by factors relating to her age and overweight condition.

Dr. Loney testified at the evidentiary hearing on Defendant's Rule 29.15 motion that while his observations of the Victim were consistent with forcible intercourse, he could not form an opinion about whether the conditions he observed were caused by forcible as opposed to consensual sexual intercourse. The doctor remembered being contacted by someone from the Public Defender's Office prior to the trial but could not remember any of the contents of that conversation. He testified that, "I think I would have been pretty noncommittal at that point also, or have no opinion or whatever you want to state." He admitted that he could have told the investigator that the evidence was consistent with forcible intercourse but that he thinks he would have said that he was unable to form an opinion one way or the other.

An investigator with the Public Defender's Office testified that he met with Dr. Loney personally prior to trial to determine what his testimony would be and that the stipulation accurately reflected the results of that meeting. He testified that he believed he talked with Dr. Loney about whether the bruises could have been caused by consensual sexual intercourse, and his response was that "[i]t was his opinion that the injuries that she sustained were consistent with forcible sex."

▮ In order to prevail on a claim of ineffective assistance of counsel, Defendant must show (1) that his attorney failed to exercise the customary skill and diligence that a reasonably competent attorney would perform under similar circumstances, and (2) that he was thereby prejudiced. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984); *Sanders v. State,* 738 S.W.2d 856, 857 (Mo.

banc 1987). Movant has the burden of proving both grounds by a preponderance of the evidence in order to prevail. *Id.* Rule 29.-15(h). Our review of the denial of postconviction relief is limited to a determination of whether the findings and conclusions of the motion court were clearly erroneous. Rule 29.15(j); *Sanders v. State,* 738 S.W.2d at 857.

■ In the instant case, the motion court found that Movant had satisfied his burden of showing the first prong of the *Strickland* test (failure to exercise the skill and diligence of a reasonably competent attorney under those circumstances) by counsel entering into the stipulation which went to a critical issue (force versus consent) without assuring himself through a deposition, affidavit, written statement, medical report or firsthand personal knowledge, that the stipulation accurately reflected what the witness' testimony would be. The second prong of the *Strickland* test (prejudice), however, is not presumed from a showing of deficient performance, but also must be affirmatively proved. *Strickland,* 466 U.S. at 693, 104 S.Ct. at 2067, 80 L.Ed.2d at 697; *Sidebottom v. State,* 781 S.W.2d 791, 796 (Mo. banc 1989).

Prejudice is not proved by showing that trial counsel's errors had some conceivable effect on the outcome of the proceedings, but rather, there must be proof of a reasonable probability that the result would have been different but for the errors. *Strickland v. Washington,* 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698; *Sidebottom v. State,* 781 S.W.2d at 796.

In the instant case, the motion court found that there was an insufficient showing of prejudice and denied the motion. In doing so, it noted that there was significant other evidence pointing to the use of force, including the Victim's testimony; that following the alleged occurrence the Victim was crying and shaking; that the TV cable had been cut on the back side of the house and that someone had entered through a cut window screen; the bed in the Victim's son's room had been cut or stabbed several times; and the Victim had bruises on her. The trial court also noted that Defendant had presented the stipulation concerning Dr. SoWash's testimony which provided evidence to substantiate Defendant's theory of consensual intercourse.

It should be noted that Dr. Loney's testimony at the time of the evidentiary hearing on Defendant's Rule 29.15 motion occurred approximately one year and eight months after the trial. Even in his testimony at the evidentiary hearing, Dr. Loney did not dispute the stipulation's recital of his opinion that the evidence was consistent with forcible intercourse, but rather, added the possibility that it could have been consensual. Based on the above, we are unable to conclude that the trial court's finding was clearly erroneous and, therefore, deny this point.

The judgment of the trial court and the order of the motion court are affirmed.

FLANIGAN, P.J., and CROW, J., concur.