**Julius MARTIN, Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. ED 85959.**

Missouri Court of Appeals, Eastern District, Division One.

March 28, 2006.

Jo Ann Rotermund, Assistant Public Defender, St. Louis, MO, for appellant.

Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

Julius Martin appeals the judgment denying his Rule 24.035 motion without an evidentiary hearing. We affirm.

## I. BACKGROUND

Martin was charged by indictment with first-degree robbery based on allegations that he and another defendant forcibly stole several items and, in the course thereof, displayed what appeared to be a dangerous instrument. The indictment also included an armed criminal action count, in which it was alleged that the defendants knowingly committed the felony of first-degree robbery with and through the use, assistance and aid of a dangerous instrument.

At the plea hearing, Martin stated that he understood he was charged with robbery in the first degree and armed criminal action and that he discussed these charges with his lawyer, who explained them to Martin so he could understand them. The State asserted that, if the case went to trial, it would prove that Martin forcibly stole a knife, a cigarette, a lighter and money from the victim; that, in the course thereof, Martin displayed what appeared to be a dangerous instrument; and that Martin knowingly committed that felony with, and through the use, assistance and aid of, a dangerous instrument. Upon further questioning by the court, the State explained that the dangerous instrument was a knife: "Martin had a knife that he had taken out of the victim's pocket and placed near his throat." When the trial

court asked if the state's statement was accurate, Martin responded "Most of it was, sir." The court inquired further:

THE COURT: Okay, did you participate in robbing this person?

DEFENDANT: Yes, sir.

THE COURT: Okay. And somebody used a knife in the course of the robbery, is that right?

DEFENDANT: Yes, sir, he pulled a knife out on me and I took it from him, sir.

THE COURT: Oh, okay. And did you take something from him after you took the knife?

DEFENDANT: Yes, sir.

The State explained that the range of punishment for the robbery was ten to 30 years or life imprisonment and three years to life for the armed criminal action. Martin stated that he understood the range of punishment. The trial court then asked if Martin understood that, because he had no plea agreement, Martin could be sentenced up to life in prison on both counts. Martin said he understood. The trial court went on to explain that Martin would have to serve 85% of any sentence on the robbery without probation or parole and at least three years for armed criminal action without probation or parole. Martin said he understood. The trial court also explained the possibility that the sentences on these counts could be ordered to run consecutively, in which case Martin would be in prison for a long time. Martin said he understood.

Just before entering his pleas, Martin again stated that he had discussed the case with his lawyer, who fully advised him as to all parts of his case, including his legal rights. Martin said he understood his right to a jury trial and all the attendant rights described by the trial court, all of which he understood were waived by pleading guilty. Martin pled guilty to both counts, and the trial court accepted the pleas.[1]

Martin filed a motion for post-conviction relief under Rule 24.035, claiming that his pleas lacked a sufficient factual basis because the State failed to show that the knife was used forcibly to take the victim's property and failed to show that the knife was a dangerous instrument or deadly weapon. Martin also alleged that the State only established a factual basis for robbery in the second degree and that his sentence exceeded the maximum penalty for second-degree robbery. Finally, Martin claimed that his plea to armed criminal action was unknowing, involuntary and unintelligent because the court failed to advise him of the maximum sentence for that crime.

The motion court denied Martin's motion without an evidentiary hearing, finding that his claims were directly refuted by the record showing that he understood the nature of the charges and the range of punishment. The motion court concluded that, contrary to Martin's argument, a description of the knife's length was not required to establish a factual basis for either of these charges; rather, the knife was shown to constitute a dangerous in-

---

1. When first asked how he pled to robbery in the first degree, Martin responded "Guilty," but then asked the court to "rewind." When the court told Martin that he had said he pled guilty to robbery in the first degree, Martin said "Wow. Did I?" The court then asked again if he wanted to plead guilty to first-degree robbery, and Martin said "I guess, yeah. Yes, sir." The court reminded Martin that it was his decision. Martin expressed concern over what a jury might do, and the court said that a jury may or may not find him guilty and again told him that it was his decision. The court asked again: "So do you wish to plead guilty?" Martin said "Yes, sir."

strument as required for both robbery in the first degree and armed criminal action. The motion court also concluded that Martin clearly understood that punishment for armed criminal action ranged from three years to infinity. Martin appeals.

## II. DISCUSSION

■■■■ We review the denial of a post-conviction motion under Rule 24.035 to determine whether the motion court's findings of fact and conclusions of law were clearly erroneous. *Weeks v. State*, 140 S.W.3d 39, 44 (Mo. banc 2004). The motion court's findings and conclusions will be deemed clearly erroneous only if, after reviewing the record, this Court is left with the definite and firm impression that a mistake has been made. *Id.*

■■■■ On appeal, Martin argues that he was entitled to an evidentiary hearing on his claims. A movant is entitled to an evidentiary hearing on a motion for post-conviction relief only if: (1) he alleges facts, not conclusions, warranting relief; (2) the facts alleged are not refuted by the record; and (3) the matters complained of prejudiced the movant. *Simmons v. State*, 100 S.W.3d 143, 145 (Mo.App. E.D.2003). No hearing will be held if the record of the case conclusively shows that the movant is entitled to no relief. Rule 24.035(h). If the guilty plea proceedings directly refute that the movant's plea was involuntary, then he is not entitled to an evidentiary hearing. *Cain v. State*, 859 S.W.2d 715, 717 (Mo.App. E.D.1993). The record in this case directly refuted Martin's claims that the pleas lacked a factual basis and that his plea to armed criminal action was made involuntarily and unknowingly because he was not advised of the maximum penalty for that crime.

### A. Factual Basis

■■■■ "The court shall not enter a judgment upon a plea of guilty unless it determines that there is a factual basis for the plea." Rule 24.02(e). A factual basis exists if the defendant understands the facts presented at the guilty plea proceeding and those facts establish the commission of the charged crime. *DeClue v. State*, 3 S.W.3d 395, 397–98 (Mo.App. E.D. 1999). Every element of the crime need not be explained to the defendant, as long as he understands the nature of the charge. *State v. Taylor*, 929 S.W.2d 209, 217 (Mo. banc 1996). Moreover, the factual basis does not have to be established from the defendant's words or by an admission of the facts as recited by the State, as long as the basis exists on the record as a whole. *See id.; see also State v. Morton*, 971 S.W.2d 335, 340 (Mo.App. E.D.1998). "If the plea of guilty is voluntarily and understandingly made and unequivocal as to the factual requisites necessary to establish each element of an offense, the plea itself forms a factual basis for the guilty plea." *State v. Shafer*, 969 S.W.2d 719, 734 (Mo. banc 1998). A factual basis is established where the information or indictment clearly charges the defendant with all the elements of the crime, the nature of the charge is explained to the defendant and the defendant admits guilt. *Bailey v. State*, ED 84855, 191 S.W.3d 55–56, 2005 WL 1802356, at *3 (Mo.App.E.D. August 2, 2005); *Ivy v. State*, 81 S.W.3d 199, 202 (Mo.App. W.D.2002).

In this case, the indictment charged Martin with all the required elements of first-degree robbery and armed criminal action. Under section 569.020 RSMo 2000,[2] a person commits robbery in the first degree when he "forcibly steals property and in the course thereof he, or another participant in the crime, . . . [d]is-

---

**2.** All statutory references are to RSMo 2000, unless otherwise noted.

plays or threatens the use of what appears to be a deadly weapon or dangerous instrument." "Forcibly steals" is defined as using or threatening the immediate use of physical force on another to prevent resistance to the taking of property or retention of stolen property or to compel another to give the property over. Section 569.010(1). Any person who commits a felony, including first-degree robbery, "by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action." Section 571.015.1.

Martin argues that because the State did not mention that he threatened the immediate use of physical force, this was not forcible stealing and there is no factual basis for the robbery charge. He also contends that there was no factual basis for either charge because he admitted only to taking the knife from the victim, not to using the knife to obtain the victim's property. These arguments are directly refuted by the record. Martin expressly agreed with the trial court that he took the knife from the victim and then took something else from the victim after that. Moreover, the State asserted that Martin placed the knife near the victim's throat.

That Martin only agreed with "most" of the State's recitation of the facts is irrelevant. *See Taylor*, 929 S.W.2d at 217; *see also Morton*, 971 S.W.2d at 340. In any case, it became obvious upon the court's further questioning that the part of the State's factual recitation that Martin disagreed with was the claim that Martin took the knife out of the victim's pocket. Rath-

er, Martin clarified, the victim took the knife out of his own pocket, and then Martin took it from him. Martin's conduct constituted forcible stealing, during which he displayed a knife.

Martin also argues that although the armed criminal action statute refers to the use of a "dangerous instrument" or "deadly weapon," the definition of "knife" in section 571.010(10) [3] should apply. Application of Section 571.010(10) would require the State to show that this knife blade was more than four inches long. Martin claims there is no such information regarding the knife in this record and, therefore, no factual basis for armed criminal action.

Despite Martin's various arguments for why this definition should control, it is well-settled that the definitions of "dangerous instrument" and "deadly weapon" found in section 556.061—not the definition of "knife" in chapter 571—apply to the armed criminal action statute. The definition of "knife" in section 571.010(10) "does not purport to define what is or is not a 'dangerous instrument' or 'deadly weapon' and has no application to statutes using those terms." *State v. Chowning*, 866 S.W.2d 165, 168 (Mo.App. S.D.1993).[4] Thus, section 571.010(10) does not apply to the armed criminal action statute. *See State v. Schuler*, 838 S.W.2d 19, 20 (Mo. App. E.D.1992). Rather, the definitions of "dangerous instrument" and "deadly weapon" in section 556.061 apply. *See id.* at 20–21; *see also State v. Maynard*, 714 S.W.2d 552, 557–558 (Mo.App. W.D.1986). "Dangerous instrument" is defined in that section as:

**3.** "For purposes of this chapter, 'knife' does not include any ordinary pocketknife with no blade more than four inches in length." Section 571.010(10).

**4.** Martin contends that *Chowning* is inapplicable because the defendant in that case conceded that the knife in question was a

"dangerous instrument," and, therefore, conviction for armed criminal action was authorized even if the charge was for use of a "deadly weapon." 866 S.W.2d at 169. Despite that factual distinction, the general principles of law in *Chowning* regarding section 571.010(1) are applicable.

any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury. Section 556.061(9) RSMo. Cum.Supp.2005.

■ Martin contends that, even if the definition of "dangerous instrument" applies, the record does not show that this knife was capable of inflicting death or serious injury because he never used the knife. We disagree. "A knife used in a threatening manner is a dangerous instrument." *State v. Jackson*, 865 S.W.2d 678, 680 (Mo.App. E.D.1993) (evidence that defendant confessed to using steak knife to force victim into bedroom, where knife was found, was sufficient to show knife was dangerous instrument and to permit finding of guilt on armed criminal action). The record shows that Martin took the knife from the victim and then held it to the victim's throat. This was sufficient to show that he used the knife in a threatening manner, and, therefore, it constituted a dangerous instrument.

In sum, the indictment set forth all the essential elements of these crimes, the nature of these charges were explained to Martin—which he indicated he understood and had discussed with his lawyer—and he pled guilty. A factual basis for each charge was established by the record as a whole, which directly refutes Martin's claim in his post-conviction motion.[5] Thus, the motion court did not clearly err by denying this claim without an evidentiary hearing.

**B. Advice Regarding Maximum Sentence**

■ Martin also argues that the record is "utterly devoid" of any indication that the trial court advised him of the maximum sentence he could receive for armed criminal action, as required by Rule 24.02(b), and that he would not have pled guilty to that charge if he had been properly advised of all the consequences. Rule 24.02(b) provides that before accepting a guilty plea, the trial court must inform the defendant of, and determine that the defendant understands, "the maximum possible penalty provided by law." The armed criminal action has no statutorily mandated maximum penalty, and, therefore, a defendant may be sentenced to any term of years above the minimum, including life imprisonment. *State v. Bolds*, 11 S.W.3d 633, 637 (Mo.App. E.D.1999). The trial court expressly told Martin that he could be sentenced up to life in prison on both counts, which Martin indicated he understood. Martin also repeatedly indicated that he understood the range of punishment, the amount of actual time he would serve, the availability of probation or parole and the possibility that the sentences would run consecutively.

Admittedly, the trial court did not explain that there was no maximum term of years specified in the armed criminal action statute and that that meant it could impose a term of any number of years, including amounts that would be greater than natural life. Even if Rule 24.02(b) required the court to tell a defendant that a particular crime carried no mandatory maximum penalty, the failure to do so in this case was at worst a harmless, technical violation because the information provided to Martin was sufficient for him to make an intelligent decision regarding his plea. *See generally Guyon v. State*, 792 S.W.2d 708, 709 (Mo.App. E.D.1990). He was under no misapprehension at the time he entered his plea. *See id.* (whether

---

5. Because we conclude that there was a factual basis for first-degree robbery, we need not address Martin's argument that he was sentenced in excess of the maximum penalty for second-degree robbery.

guilty plea was knowingly and voluntarily made depends on whether movant was mislead, or under misapprehension, at time of plea).

Martin's claim that he did not understand the range of punishment and did not plead guilty voluntarily and knowingly is directly refuted by the record, and the motion court did not err by denying this claim without an evidentiary hearing.

Point denied.

## III. CONCLUSION

The judgment is affirmed.

MARY K. HOFF, P.J., and CLIFFORD H. AHRENS, JJ., Concur.