**STATE of Missouri, Plaintiff–Respondent,**

v.

**William D. MAYFIELD, Jr., Defendant–Appellant.**

**No. 24599.**

Missouri Court of Appeals,
Southern District,
Division Two.

Aug. 28, 2002.

Thomas Pyle, Stockton, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Sara L. Trower, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

William D. Mayfield, Jr., (defendant) was charged as a persistent offender with driving while intoxicated, §§ 577.010[1] and 577.023.3, and with murder in the second degree, § 565.021.1(2). Defendant waived his right to trial by jury. He was tried by the trial court without a jury and found guilty of both offenses. He contends on appeal that the evidence was not sufficient for the trial court to have found him guilty beyond a reasonable doubt; that he was not proven to be the driver of the vehicle that was the basis for the charges of which he was found guilty. This court affirms.

On review of criminal matters tried by the court without a jury, the standard of review is the same as in cases tried by a jury. *State v. Pollard,* 941 S.W.2d 831, 833 (Mo.App.1997). We accept as true all evidence tending to prove guilt to-

---

1.  References to statutes are to RSMo 2000.

gether with all reasonable inferences that support the finding, and all contrary evidence and inferences are ignored. *Id.* We determine whether there was sufficient evidence from which a trier of fact could have found the defendant guilty beyond a reasonable doubt. *State v. Phillips,* 940 S.W.2d 512, 520 (Mo.banc 1997). Moreover, this Court does not weigh the evidence or determine the reliability or credibility of witnesses. *State v. Frappier,* 941 S.W.2d 859, 861 (Mo.App.1997).

*State v. Matney,* 979 S.W.2d 225, 226 (Mo. App.1998). *See also State v. McCarty,* 956 S.W.2d 365, 367–68 (Mo.App.1997). The evidence, considered in that light, is as follows.

Robert Gardner and his brother were on their way to Hutcheson, Kansas, in Robert's car on March 19, 2001, when the car's fuel pump failed. They were about five miles west of Collins, Missouri. Defendant and his daughter stopped to help. They told Robert they could help him fix the car the next day. They took Robert and his brother to El Dorado Springs to spend the night. The next morning, March 20, the daughter picked them up and took them to defendant's house to fix the car. They arrived at the house at "7:30, eight o'clock in the morning."

Defendant and Robert's brother went to get the car from where it had been left the previous evening and bring it to defendant's house. When they returned, they had breakfast. Defendant and Robert's brother began drinking. Robert recalled defendant "pouring whiskey or something into coffee." Defendant's wife made two "beer runs" during the day. The first time was in the afternoon "around noon or one o'clock" to El Dorado Springs. Robert went along to "take a part back" that was not needed to repair his car. Robert also went on the second "beer run" to Collins. He explained that defendant's wife "went to the grocery store [on the run to El Dorado Springs] ... and got a big old thing of whiskey.... And the second time, she went to Collins at a gas station there and got some beer."

Robert and defendant's wife returned from the second run about "an hour-and-a-half, two hours" before Robert and his brother left defendant's house. Defendant had been drinking throughout the day. Robert was asked what he observed about defendant's physical condition. Robert answered, "Not good. He was pretty drunk." Robert explained, "I mean, I can—you see a drunk person in their eyes. The way he was talking, the way—the motor movements, the way he moved. I mean, he was pretty impaired." Robert described defendant as "staggering he was so drunk."

When Robert and his brother left, defendant was in a blue truck near a garage. A black dog was in the truck with him. Defendant's father-in-law was at the property. Robert explained, "And [defendant] would sit there and he would start the truck up, rev the engine up. And I could tell his father-in-law would get agitated about it. And he would shut it off; just sit there. He had beer with him. He was sitting there and drinking."

Robert and his brother left to go to their home. When they reached Nevada, Missouri, which was 30 or 40 miles from where they had been with defendant, they realized they had left some things at defendant's property. They returned to get what they left there. When they got to the property, the truck was gone. Defendant's mother-in-law was the only one there.

During the early evening hours of March 20, Randy Esry was at his father's house about three and one-half miles west of Collins, Missouri. Highway 54 runs in

front of the house. Mr. Esry explained, "It was just coming dark." He heard a noise and saw a flash of light to the northwest in the direction of Highway 54. He and his father thought it was a tire blowout. They got a flashlight and went to assist. Randy explained what they found:

> [T]here'd been a real bad wreck right there.... And we just drove right in the middle of it. And there was a blue Chevrolet pickup nosed off to the south, right in that curve. And then, right in the middle of Highway 54 is a baby seat sitting there.... And the other car was pointed kind of to the north across the highway.

Randy looked in the pickup. Defendant was lying in the seat "just moving a little bit." Defendant's head was "kind of pointed down to the passenger door." His legs were pulled up in the seat. There was a big black dog in the truck sitting in the seat with defendant. Randy looked around for other people. He found no one other than the driver of the car the pickup had struck, a lady.

Trooper Brian O'Sullivan of the Missouri State Highway Patrol arrived shortly after the accident occurred. He looked in each of the two vehicles. He saw defendant in the blue pickup, "[l]egs basically under the steering wheel. Body on the passenger side. And head kind of hanging off the seat, almost into the floorboard." Allona Case was in the other vehicle. The injuries Ms. Case sustained from the collision were fatal.

Sgt. Albert Brown, an accident reconstructionist for the Missouri State Highway Patrol, reviewed the accident. He concluded that the pickup crossed into the westbound lane of travel as it traveled eastbound; that it struck the vehicle operated by Ms. Case.

Defendant's sole point on appeal contends the trial court erred in finding him guilty of both counts with which he was charged "because the state failed to present sufficient evidence to prove beyond a reasonable doubt that the defendant was physically driving or operating a motor vehicle while intoxicated...." Defendant argues no one saw him driving or operating the pickup at the time of the accident, and he did not admit to having driven the pickup; that the state's evidence was circumstantial and not sufficient to sustain the convictions.

Defendant relies on *State v. Swinson*, 940 S.W.2d 552 (Mo.App.1997), in support of his claim that the evidence was not sufficient to prove, beyond a reasonable doubt, that he was driving the pickup truck that was involved in the collision that killed Ms. Case. *Swinson* is a driving-while-intoxicated case. Mr. Swinson was found about 10:00 a.m. behind the wheel of an automobile some 15 feet off the traveled portion of a street on grass in a "park-like" area. The automobile in which he was found was not impeding traffic. The key was in the ignition but the vehicle was not running. Swinson was disheveled and smelled of intoxicants; he was belligerent, glassy-eyed, and required assistance to stand and walk. He was slurred of speech and was unable to follow directions. Police officers who found Mr. Swinson did not feel the hood to determine if it was warm.

Swinson testified his ex-fiancée had driven the car from Cassville, Missouri, to Joplin, Missouri, where he was found; that he purchased vodka and beer and drank while she drove. He said the two of them argued; that when they arrived in Joplin, his ex-fiancée parked the car and left it in the position where he was found and arrested. Mr. Swinson's ex-fiancée testified. Her testimony coincided with Mr. Swin-

son's. The trial court, sitting without a jury, found Mr. Swinson guilty. This court reversed, noting the trial court did not make findings questioning the credibility of the witnesses; that the trial court determined "that Swinson was 'guilty under his own evidence.' " *Id.* at 553.

There was no evidence in this case of anyone else driving the pickup that was involved in the collision. Here, unlike *Swinson,* defendant was found in the pickup promptly following the accident. The scene was searched to determine if anyone else was present. No one, other than the occupant of the vehicle the pickup struck, was found. Defendant's vehicle was in the traveled part of the roadway rather than, as in *Swinson,* on an area off the roadway.

The circumstances of this case are more akin to those in *State v. Wiles,* 26 S.W.3d 436 (Mo.App.2000). The defendant in *Wiles* was found shortly before 1:00 a.m. in a truck parked facing a garbage dumpster with its engine running at a fast idle. Mr. Wiles was slumped over the steering wheel. The vehicle was in park. Mr. Wiles did not respond to a police officer knocking on the window. The officer opened the driver's side door. Mr. Wiles smelled of intoxicants and had glassy and watery eyes. Defendant was found guilty of driving while intoxicated.

Mr. Wiles asserted on appeal that the evidence did not support a finding beyond a reasonable doubt that he had "operated" his truck; that it showed only that he had been asleep in the truck; that the truck was in park and there was no evidence he had started, moved, or driven the truck while intoxicated. This court held the evidence was sufficient for a reasonable fact finder to find defendant guilty, beyond a reasonable doubt, of driving while intoxicated. *Id.* at 441. Although *Wiles* involved a situation in which a defendant was found in a parked vehicle rather than injured following an accident, this court finds the evidence in this case equally compelling for purposes of permitting a finder of fact to conclude defendant was driving the pickup at the time it was involved in the collision with Ms. Case's automobile.

Other cases support the state's argument that the evidence was sufficient for the trial court to have found defendant guilty. In *Heskett v. Director of Revenue,* 62 S.W.3d 103 (Mo.App.2001), a man found injured on the ground across the road from a motorcycle lying on its side was found to be its operator. In *State v. Williams,* 752 S.W.2d 454 (Mo.App.1988), evidence that the occupant of a truck found stopped on the wrong side of the road with two wheels on the pavement was sufficient to support the conclusion that the man had driven the truck. In *State v. Devall,* 654 S.W.2d 172 (Mo.App.1983), although there were no witnesses to an accident, the court concluded the sole occupant found in a car that was partially on the pavement following a fatal collision with another car was its driver.

Circumstantial evidence may be relied on when the arresting officer does not actually see who operated the motor vehicle. *Mayberry v. Director of Revenue,* 983 S.W.2d 628, 631 (Mo.App. S.D.1999). Circumstantial evidence means evidence that does not directly prove a fact in issue but gives rise to a logical inference that the fact exists. *State v. Harris,* 807 S.W.2d 528, 529 (Mo.App. W.D.1991).

*Heskett,* 62 S.W.3d at 106.

The evidence in this case was circumstantial. It was sufficient for the trier of fact to find defendant guilty beyond a reasonable doubt. The judgment is affirmed.

SHRUM, J., and RAHMEYER, C.J., concur.