**STATE of Missouri, Plaintiff–Respondent,**

v.

**Rodney A. DUNN, Defendant–Appellant.**

**No. 24775.**

Missouri Court of Appeals, Southern District, Division Two.

April 17, 2003.

Steven Willibey, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Charnette D. Douglass, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Rodney A. Dunn (defendant) was convicted, following a jury trial, of the class D felony of interfering with an arrest. § 575.150.1.[1] He was sentenced to confinement for 60 days and payment of a fine in the amount of $2,000. This court affirms.

For purposes of its review, this court accepts as true all evidence that tends to prove defendant guilty, together with all reasonable inferences that support the jury verdict, and disregards evidence and inferences to the contrary. *State v. Brown*, 660 S.W.2d 694, 698–99 (Mo. banc 1983). In assessing whether the evidence supports conviction, this court determines if there was sufficient evidence from which

---

1. References to statutes are to RSMo 2000.

a reasonable juror might have found defendant guilty beyond a reasonable doubt. *State v. Parnell,* 21 S.W.3d 896, 899 (Mo. App.2000).

Officers of the Newton County Sheriff's Department were investigating an assault. They were looking for Regina Roberts as a possible suspect. The officers had been advised that there were outstanding warrants for Ms. Roberts' arrest on other charges, including a felony bad check charge. Sgt. Richard Leavens and Cpl. Terry Nenneman were provided the address of a residence where they believed Ms. Roberts could be located. When they went to the residence, they were told Ms. Roberts was not there. They returned a short time later. They saw three vehicles leaving the driveway of the residence. The second of the three vehicles matched the description the officers had for Ms. Roberts' vehicle.

Sgt. Leavens stopped the first vehicle. Cpl. Nenneman stopped the second. Ms. Roberts was driving the second vehicle. Defendant was a passenger in the vehicle. Ms. Roberts was asked to step behind her vehicle so her identification could be checked. She got out of the vehicle. Defendant followed. Defendant said Ms. Roberts had been assaulted; that she should see a doctor; that she needed insulin.

Defendant was told that Ms. Roberts could not leave. Defendant replied, "[N]o, we're leaving now." He stepped to within two or three feet of Cpl. Nenneman saying, "Well, aren't you Newton County's finest, you bunch of idiots." Cpl. Nenneman described defendant's tone of voice as "loud and aggressive." Defendant was told to get back in the vehicle. He did not do so until after being told three or four times.

Defendant got into the car "for about a minute." Defendant got out again. Cpl.

Nenneman was asked the following question about what occurred and gave the following answer.

Q. And when he got back out of the vehicle after you ordered him back in the vehicle, describe what he did.

A. Well, that process, it took place two to three times, where I told him to go back to his vehicle, and he would slowly go back, and then he would come back again. Then after Officer Leavens approached and came back, we were still in the process of trying to confirm warrants. Ms. Roberts had given us a different date of birth. Once we had pretty much confirmed it was her, we did place her in handcuffs, and then he came back.

Sgt. Leavens was asked about the effect of defendant's actions on the officers' ability to arrest Ms. Roberts. He was asked the following questions and gave the following answers.

Q. And in the process of getting her arrested, did [defendant's] actions have any effect on your ability to arrest Ms. Roberts?

A. Yes; it changed how we would normally handle the situation.

Q. How so?

A. Well, normally we wouldn't have had the second party to deal with in a situation like that who would be aggressive towards us. Normally we wouldn't have handcuffed Ms. Roberts prior to the verification of the warrants. But because of our safety issue, we handcuffed her prior to that. And that we had to continually deal with him.

Q. How many times would you estimate that you told [defendant] to calm down?

A. From the first time he was out of the car with me, probably four or five times.

At trial defendant moved for judgment of acquittal at the close of the state's evidence and at the close of all evidence. Both motions were overruled. The trial court received the jury verdict following deliberations. After denying a motion for judgment of acquittal or alternative motion for new trial, the trial court granted allocution and imposed sentence in accordance with the verdict of confinement in the county jail for 60 days and payment of fine in the amount of $2,000.

■■■ Defendant's first point on appeal contends the trial court erred in denying his motions for judgment of acquittal at the close of the state's evidence and at the close of all the evidence; in accepting the jury verdict of guilty; and in imposing sentence "because the state's evidence was insufficient to support the jury's finding of guilt beyond a reasonable doubt." Defendant argues the evidence did not establish that the arrest with which he was alleged to have interfered was an arrest for a felony offense.[2]

Sgt. Leavens testified that he and Cpl. Nenneman had been told there were possibly four outstanding warrants for Ms. Roberts' arrest. Their department's central dispatch had provided that information before her car was stopped. He was asked if he "remember[ed] what the warrants were for." He answered, "There were two for probation violation, one for felony bad checks, and a third for, I believe it was a misdemeanor domestic assault." Sgt. Leavens was asked if Ms. Roberts was arrested on all of the warrants. He answered, "On all of them, yes."

Defendant bases his argument that the evidence was not sufficient for the jury to have found defendant guilty beyond a reasonable doubt on the assertion that Sgt.

Leavens' testimony was hearsay. He argues the verdict was, therefore, not supported by substantive evidence.

The evidence is uncontroverted that Cpl. Nenneman intended to arrest Ms. Roberts; that he intended to arrest her for the charges for which there were outstanding warrants. The officers had been told those warrants included a felony bad check charge.

■■■ *State v. Davenport*, 924 S.W.2d 6 (Mo.App.1996), explains:

A hearsay statement is an out-of-court statement offered to prove the truth of the matter asserted. *State v. Parker*, 886 S.W.2d 908, 925 (Mo.banc 1994). If an out-of-court statement is not offered to prove the truth of the matter asserted but instead is offered to prove relevant background, then the statement is not inadmissible hearsay. *State v. Jones*, 863 S.W.2d 353, 357 (Mo.App. W.D. 1993). Statements made by an out-of-court declarant that explain subsequent conduct are admissible as supplying relevant background and continuity. *State v. Dunn*, 817 S.W.2d 241, 243 (Mo.banc 1991).

*Id.* at 10.

Arguably, Sgt. Leavens' testimony that a dispatcher reported that one of the warrants on which defendant was arrested was for a felony bad check charge was not offered to prove there was a felony warrant outstanding and was, therefore, not hearsay but was offered to explain subsequent conduct of he and Cpl. Nenneman, their dealing with and eventual arrest of defendant, and the arrest of Ms. Roberts. Regardless, no objection was posed to Sgt. Leavens' testimony that one of the warrants on which Ms. Roberts' arrest was based was a felony warrant. Even if the

---

**2.** Interfering with an arrest for a felony is a class D felony. § 575.150.4. If the arrest is not a felony arrest, interference is a class A misdemeanor. *Id.*

statement were considered hearsay, because it was given without objection, it was proper for the jury to consider it as substantive evidence. *State v. Archuleta*, 955 S.W.2d 12, 14–15 (Mo.App.1997).

■ The relevant inquiry in determining if defendant's interference with an arrest was a felony is whether the arresting officer with whom defendant interfered contemplated making a felony arrest. *See State v. Merritt*, 805 S.W.2d 337, 339 (Mo. App.1991). "'A jury may believe all of the testimony of any witness or none of it, or may accept it in part and reject it in part.'" *Miller v. Farm Bureau Town & Country Ins. Co. of Missouri*, 6 S.W.3d 432, 439 (Mo.App.1999), quoting *Burr v. Singh*, 362 Mo. 692, 243 S.W.2d 295, 298 (1951). Sgt. Leavens testified that one of the outstanding warrants on which Ms. Roberts was being arrested was for a felony. His testimony was sufficient for the jury to have found the officers contemplated making a felony arrest; that it was that arrest with which defendant interfered. The evidence was sufficient for a reasonable juror to have found defendant guilty beyond a reasonable doubt. Point I is denied.

■ Point II argues the trial court erred in imposing a fine on defendant because it did not follow the requirement of § 560.026 that a court imposing a fine shall proportion it to the financial resources of a defendant. Defendant further argues it was error to impose the fine assessed because the trial court did not find he derived a pecuniary gain from the offense or that imposition of a fine would have any deterrent or corrective value.

Provisions of § 560.026 on which defendant relies state:

1. In determining the amount and the method of payment of a fine, the court shall, insofar as practicable, proportion the fine to the burden that payment will impose in view of the financial resources of an individual. The court shall not sentence an offender to pay a fine in any amount which will prevent him from making restitution or reparation to the victim of the offense.

. . .

3. The court shall not sentence an individual to pay a fine in addition to any other sentence authorized by section 557.011, RSMo, unless

(1) He has derived a pecuniary gain from the offense; or

(2) The court is of the opinion that a fine is uniquely adapted to deterrence of the type of offense involved or to the correction of the defendant.

. . .

At the time of sentencing, the trial court asked if defendant wished to address the issue "[r]egarding the fine." Defendant's attorney replied, "Well, I would just argue that [defendant] is an indigent client, does not have a lot of money right now, and certainly is not likely to have a lot of money in the near future, particularly if he spends the next 60 days in jail. So if the Court is not going to give him concurrent time, I would ask the Court to take that into consideration in setting the amount of his fine."

■ Defendant did not assert § 560.026 as a basis for limiting or negating imposition of a fine. The issue defendant asserts in Point II was not presented to the trial court. "An appellate court will not convict a trial court of error on an issue that was not put before it to decide." *State v. Nunley*, 992 S.W.2d 892, 895 (Mo.App.1999). Point II is denied.

■ Although the foregoing disposes of the issues raised on appeal, a further mat-

ter requires attention and direction. The sentence the trial court imposed followed a jury trial and, in accordance with the jury verdict, was for "confine[ment] in the county jail for a period of 60 days, and a fine in the amount of $2,000." The copy of the "Sentence and Judgment" included in the legal file does not reflect that sentence. It states the defendant was "found guilty upon a plea of guilty." It states the sentence imposed was a fine of $2,000.

■ This is a clerical mistake. Rule 29.12 gives the trial court authority to correct clerical mistakes in judgments and other parts of the record arising from oversight or omission. *State v. Box,* 956 S.W.2d 460, 463 (Mo.App.1997); *Brager v. State,* 625 S.W.2d 892, 895 (Mo.App.1981). That authority should be exercised in this case. Accordingly, the trial court is directed to enter a corrected judgment that properly reflects the trial proceedings and the sentence that was imposed. The judgment is affirmed with directions.

SHRUM, J., and RAHMEYER, C.J., concur.