STATE of Missouri, Plaintiff–
Respondent,

v.

Melvin L. PARROW, Defendant–
Appellant.

No. 25415.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 28, 2003.

Application for Transfer Denied
Oct. 23, 2003.

Kent Denzel, Asst. Public Defender, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Breck Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Melvin L. Parrow (defendant) was charged with the class B felony of unlawful use of weapons. § 571.030.1(9).[1] Defendant waived trial by jury. Following trial, defendant was found guilty. He was sentenced to imprisonment for a term of 15 years. This court affirms.

Defendant presents one point on appeal. He contends the trial court erred in denying his motion for acquittal at the close of the state's evidence and in entering judgment on its finding of guilty for the reason that the evidence was not sufficient to prove his guilt.

The same standard of review is followed in criminal cases tried by the court without a jury as in cases tried by a jury. *State v. Mayfield,* 83 S.W.3d 103, 104 (Mo.App. 2002).

> "We accept as true all evidence tending to prove guilt together with all reasonable inferences that support the finding, and all contrary evidence and inferences are ignored. [*State v. Pollard,* 941 S.W.2d 831, 833 (Mo.App.1997)]. We determine whether there was sufficient evidence from which a trier of fact could have found the defendant guilty beyond a reasonable doubt. *State v. Phillips,* 940 S.W.2d 512, 520 (Mo. banc 1997). Moreover, this Court does not weigh the evidence or determine the reliability or credibility of witnesses. *State v. Frappier,* 941 S.W.2d 859, 861 (Mo.App. 1997)."

*Id.* at 104–05, *quoting State v. Matney,* 979 S.W.2d 225, 226 (Mo.App.1998).

On June 14, 2000, defendant was with Quinten Finnern, Quinten's brother John

---

1. References to statutes are to RSMo Cum. Supp.1999.

Finnern, Stephanie Pippen, a friend of Stephanie identified only as "Carol," and an unidentified friend of defendant. They were at Quinten Finnern's house. After a telephone conversation in which there was an argument, Stephanie, Quinten, defendant, and defendant's unidentified friend drove to Jesse Ramsey's house. Stephanie drove her car. Quinten sat in the front passenger seat. Defendant's friend was in the rear seat behind the driver. Defendant was in the rear seat on the passenger side. When the car approached the Ramsey house, Stephanie observed Jesse Ramsey, David Gibson, and others on the porch to the house.

Stephanie told the court, "I seen [defendant]—they—my window was rolled down and [defendant] was mouthing them." Stephanie told the court that words were exchanged between defendant and Jesse Ramsey; that she saw Jesse Ramsey run toward her car while trying to pull something from his pocket. She explained, "And then that's when I took off. And [defendant] pulled out the gun and started shooting, pulled the gun out, stuck it out the window and started shooting down at the ground." Stephanie was asked what defendant did with the gun. She answered, "He took it with him. I remember him putting it back in his pants, sticking it back down in his pants."

David Gibson testified at trial. He had been outside Jesse Ramsey's house during the early evening hours of June 14, 2000, "[j]ust hanging out." A light colored, four-door car pulled by the residence. He was asked the following questions and gave the following answers:

Q. . . . . What did the car do after it pulled onto Campbell Avenue?

A. It went down the road. People were staring at us, so we threw up our hands.

Q. Okay. What people? The people in the car?

A. Yes.

Q. Okay.

A. The people in the car were driving by us, so what we were going to do, we're going to throw up our hands just, you know—uh, the car stopped, backed up a little bit. It was probably about 40, 50 yards away, I believe. Uh, a man in the back passenger side hung out the window and shot about four or five shots.

. . .

Q. Okay. Were the shots directed at you?

A. I believe so.

. . .

Q. Who were you with when the shots were fired?

A. Just Jesse.

Q. Okay. What happened after the shots were fired?

A. They pealed out.

Q. Okay. When you say pealed out, they—they took off in the car?

A. Yeah. They took off real fast.

Q. Okay. Did you get an—could you see what kind of gun was used?

A. A revolver.

Q. Okay. And that—why do you think it was a revolver?

A. Just the way that it sounded.

David Gibson explained that he was knowledgeable about guns from hunting with his father. He said he and his father had "a lot of handguns and rifles."

Section 571.030.1 states the requirements for the offense of unlawful use of weapons:

A person commits the crime of unlawful use of weapons if he knowingly:

...

(9) Discharges or shoots a firearm at or from a motor vehicle, as defined in section 301.010, RSMo, while within any city, town, or village, and discharges or shoots a firearm at any person, or at any other motor vehicle, or at any building or habitable structure, unless the person was acting in self-defense.

There was evidence that Jesse Ramsey's house was within the city limits of Springfield, Missouri.

Section 571.010 states:

As used in this chapter:

...

(6) "Firearm" means any weapon that is designed or adapted to expel a projectile by the action of an explosive;

...

Defendant's argument that the evidence was not sufficient to prove he committed the offense of unlawful use of weapons is that "the court could only speculate from the evidence that what [defendant] used was a firearm rather than a cap gun or popgun, and the evidence from the only person who saw the gun was than [sic] [defendant] fired into the ground."

Two witnesses, Stephanie Pippin and David Gibson, testified that defendant fired a gun. One, David Gibson, was familiar with guns. He testified the weapon used was a revolver; that he could tell what kind of handgun was fired from its sound. He testified that he believed the shots were directed at him. "Gun" is an accepted description of a "firearm." *See State v. Tisius,* 92 S.W.3d 751, 757 (Mo. banc 2002); *State v. Henderson,* 826 S.W.2d 371, 377 (Mo.App.1992). The evidence was sufficient for the trier of fact to find beyond a reasonable doubt that defendant discharged a firearm. David Gibson testified that he believed the shots were directed at him. Determination of the reliability or credibility of witnesses lies with the trial court. *State v. Mayfield, supra,* at 105. Defendant's point is denied.

Although the foregoing disposes of the issue raised on appeal, a further matter requires attention and direction. The judgment the trial court entered erroneously states that defendant's conviction was based upon a plea of guilty. This is a clerical mistake in that defendant's conviction followed a trial before the court without a jury. "Rule 29.12 gives the trial court authority to correct clerical mistakes in judgments and other parts of the record arising from oversight or omission." *State v. Dunn,* 101 S.W.3d 922, 927 (Mo.App. 2003). The trial court is directed to correct the judgment in this case to properly reflect that defendant's conviction followed a trial in which he had waived a jury. The judgment is affirmed with directions. The case is remanded.

SHRUM, J., and RAHMEYER, C.J., concur.