JOHN E. PARRISH, Presiding Judge.
 

 Robert D. Hudson (defendant) was convicted, following a trial without a jury before the Circuit Court of Pemiscot County, Missouri, of murder in the first degree (Count I), § 565.020.1,
 
 [1]
 
 robbery in the first degree (Count III), § 569.020.1, and two counts of armed criminal action (Counts II and IV), § 571.015.1. Defendant was sentenced to confinement for life without possibility of probation or parole on Count I, confinement for a term of 30 years on Count II, confinement for a term of 30 years on Count III, and confinement for a term of 30 years on Count IV. The sentence for Count II was ordered served concurrently with the sentence for Count I. The sentence for Count III was ordered served consecutively to the sentences for Counts I and II and the sentence for Count IV was ordered served concurrently with the sentence for Count III. This court affirms.
 

 Jimmy Grills was home in Pemiscot County the evening of November 29, 2002.
 
 *414
 
 He shared the residence of Shirley Miller. Ms. Miller was at work. Grills, defendant, and defendant’s stepson, Timmy Jackson, were employed at a business called Trinity. Trinity was also known as the Caruth-ersville Shipyard.
 

 Defendant went to Jackson’s home the evening of November 29. Defendant asked if Jackson wanted to go with him to pick up some money. Jackson accompanied defendant. They arrived at Grills’ home about 10:00 p.m. Defendant and Jackson went to the front door and knocked. Grills answered the door. Grills looked at defendant and said, “[L]ong time no see.” Defendant and Jackson went inside.
 

 Defendant and Grills argued. Defendant was demanding money from Grills. Grills told defendant he did not have it. Defendant pulled out a revolver, pointed it at Grills and told him, “[Y]ou’re going to give it to me now.” Grills threw something at defendant. The gun fired. Grills and defendant fought. One other shot was fired after which the revolver malfunctioned.
 

 While defendant fought with Grills, he told Jackson “to give him something.” Jackson explained:
 

 Q. [by the prosecuting attorney] And did you give him something?
 

 A. Yes, sir.
 

 Q. What did you give him?
 

 A. A knife.
 

 Q. Did you open it up before you gave it to him?
 

 A. Yes, sir.
 

 Q. And when he got the knife, what did he do with it?
 

 A. They was fighting and he was hitting him with the knife.
 

 Q. When you say hitting him, do you mean stabbing him or what do you mean?
 

 A. Stabbing and hitting him with it both.
 

 While defendant and Grills fought, Jackson left the living room. He went into a back bedroom. He pulled a telephone cord out. He looked around for something to steal. He did not see anything, so he left the room. Jackson went into a bathroom where he saw a jewelry box on a counter but did not find anything to take. He walked back to the living room where defendant and Grills were fighting. Defendant was still on top of Grills. Defendant was stabbing him and choking him. Defendant told Jackson to get Grills’ wallet. Jackson took the wallet from Grills’ back pocket. Jackson put the wallet in his coat pocket. Defendant got up. He had blood on him. He went into the bathroom.
 

 Grills was on the couch in the living room. He was still alive. He got off the couch and tried to walk to the door. Jackson pushed him against the wall and he fell onto a coffee table and chair arm. Grills tried to use a phone in the living room. Jackson pulled the telephone out of Grills’ hands and pulled the telephone cord from the wall.
 

 Defendant came back into the living room and asked Jackson if Grills was still alive. Defendant grabbed Grills and threw him to the floor. Defendant pulled up the left side of Grills’ shirt “and stabbed him a couple more times in his side.” Defendant grabbed Grills’ head and tried to break Grills’ neck. Defendant and Jackson then left. Grills was not moving.
 

 Shirley Miller returned to her residence in Pemiscot County in the early morning hours of November 30, 2002. When she entered her house, she found Grills lying on the floor. He had gunshot and stab wounds. He died from loss of blood.
 

 Defendant presents one point on appeal. He contends the trial court erred in denying his motion for acquittal chai-
 
 *415
 
 lenging the sufficiency of the state’s evidence and in sentencing him on the charge of murder in the first degree. Defendant argues the evidence did not show, beyond a reasonable doubt, that he “deliberated before killing Jimmy Grills.”
 

 The same standard of review is followed in criminal cases tried by the court without a jury as in cases tried by a jury.
 
 State v. Mayfield,
 
 83 S.W.3d 103, 104 (Mo.App.2002).
 

 “We accept as true all evidence tending to prove guilt together with all reasonable inferences that support the finding, and all contrary evidence and inferences are ignored.
 
 [State v. Pollard,
 
 941 S.W.2d 831, 833 (Mo.App.1997) ]. We determine whether there was sufficient evidence from which a trier of fact could have found the defendant guilty beyond a reasonable doubt.
 
 State v. Phillips,
 
 940 S.W.2d 512, 520 (Mo.banc 1997). Moreover, this Court does not weigh the evidence or determine the reliability or credibility of witnesses.
 
 State v. Frappier,
 
 941 S.W.2d 859, 861 (Mo.App.1997).”
 

 Id.
 
 at 104-05,
 
 quoting State v. Matney,
 
 979 S.W.2d 225, 226 (Mo.App.1998).
 

 State v. Parrow,
 
 118 S.W.3d 629 (Mo.App.2003). Sufficient evidence is evidence from which the trier of fact could reasonably have found the issues raised on appeal to be in conformity with the verdict.
 
 State v. Bewley,
 
 68 S.W.3d 613, 617 (Mo.App.2002).
 

 The crime of first degree murder consists of three elements: (1) knowingly (2) causing the death of another person (3) after deliberation upon the matter. Section 565.002(3) defines the intent element of deliberation as “cool reflection for any length of time no matter how brief.” The element of deliberation may be proven from the circumstances surrounding the crime. Absent evidence of deliberation, an intentional killing is second-degree murder. [Footnotes omitted.]
 

 State v. Tisius,
 
 92 S.W.3d 751, 764 (Mo. banc 2002),
 
 cert. denied,
 
 539 U.S. 920, 123 S.Ct. 2287, 156 L.Ed.2d 140 (2003).
 
 See
 
 § 565.020.1. The only element of the offense of murder in the first degree that defendant argues was not proven is the element of deliberation.
 

 “Evidence of a prolonged struggle, multiple wounds, or repeated blows may ... support an inference of deliberation.”
 
 State v. Ervin,
 
 979 S.W.2d 149, 159 (Mo. banc 1998),
 
 cert. denied,
 
 525 U.S. 1169, 119 S.Ct. 1090, 143 L.Ed.2d 91 (1999). Defendant had the opportunity to terminate his attack on Grills in that the attack was a prolonged struggle. Furthermore, defendant left the affray to go into a bathroom to wash up then, when he returned to the living room where Grills lie wounded, asked if Grills was still moving. He then stabbed Grills two more times and attempted to break Grills’ neck.
 

 The evidence disclosed beyond a reasonable doubt that defendant had time to think about his actions before completing the attack that resulted in Grills’ death; that he thereafter inflicted additional wounds that contributed to Grills’ death. Deliberation for purposes of proving murder in the first degree occurs if the actor had time to think and intended to kill the victim for any period of time.
 
 See State v. Mitchell,
 
 408 S.W.2d 39, 43 (Mo.1966). The shortness of time for deliberating and premeditating killing is immaterial for purposes of proving murder in the first degree.
 
 Id.
 
 Defendant’s point on appeal is denied. The judgment is affirmed.
 

 BATES, C.J., and BARNEY, J., concur.
 

 [1]
 

 . References to statutes are to RSMo 2000.