STATE of Missouri, Respondent,

v.

Donald L. PAYNE, Appellant.

No. WD 67999.

Missouri Court of Appeals,
Western District.

April 29, 2008.

Joshua N. Corman, Jefferson City, MO, for respondent.

Kent Denzel, Columbia, MO, for appellant.

Before VICTOR C. HOWARD, Chief Judge, LISA HARDWICK, Judge and JAMES WELSH, Judge.

VICTOR C. HOWARD, Chief Judge.

Following a jury trial, Donald Payne appeals a conviction for second-degree assault and armed criminal action. Although there was no direct evidence of the type of object used, Payne assaulted another man and in the process left several puncture wounds on the victim's body. He now claims that the evidence was insufficient to support the conviction because the State failed to admit evidence which indicated that Payne used a "deadly weapon" as defined by section 556.061(10).[1] Payne also claims that the trial court plainly erred in failing to *sua sponte* correct a misstatement of law in the State's closing argument. We reverse the trial court's judgment. Even when all reasonable inferences are applied to the State's evidence, the record contains insufficient evidence to support an inference that Payne employed a deadly weapon in the assault.

## Facts and Background

On the evening of May 27, 2005, Ricky Cochran and Brian George drove to a bar in Benton County to buy a six-pack of beer. While at the bar, Cochran consumed one drink and George consumed two. They then left the bar in Cochran's truck and drove down a two-lane road. Shortly after leaving, Payne approached from behind in his truck and forced Cochran and George off the road. George and Payne knew each other.

Payne then pulled in front of Cochran and George's vehicle blocking them in. Payne exited his truck and walked to the passenger side of the other vehicle, where George was sitting. George attempted to open the passenger door of the truck but Payne slammed the door, knocking George back into the vehicle. George attempted to exit again. This time Payne grabbed George with his left hand and stabbed George in the neck with his right hand. At first George thought Payne pinched him. A struggle ensued and Payne stabbed George twice more, once in the ribs, through a t-shirt, and once in his buttocks, through blue jeans. Payne threatened Cochran and George that he would return with a gun and kill them both. Payne then left. Neither George nor Cochran saw the weapon used by Payne.

Blood gushed from George's neck and saturated his shirt. The puncture wound on George's neck was big enough that his finger could fit in it. George was later airlifted to a hospital in Columbia, Missouri, where he underwent emergency surgery.

At trial, Payne did not testify or present evidence. The weapon used to stab George was never found nor could the State produce a description of it. The only evidence of the type of weapon used was based on inference drawn from the type of injury suffered.[2] The jury instruction for the assault charge was predicated on a conviction upon an "attempted to cause physical injury to Brian L. George by means of a deadly weapon." The armed criminal action instruction similarly was predicated upon the commission of a felony with the "use, assistance or aid of a deadly weapon." "Deadly weapon" was defined as "any firearm, loaded or unloaded, or

---

1. Unless otherwise indicated, all citation to statutes refers to RSMo 2000 and all citation to Rules refers to Missouri Supreme Court Rules (2007).

2. The State did not present expert forensic or medical testimony that the wounds were consistent or likely to be made by a particular sort of weapon.

any weapon from which a shot, readily capable of producing death or serious physical injury, may be discharged, or a switchblade knife, dagger, billy, blackjack, or metal knuckles." A jury convicted Payne of both assault with a deadly weapon and armed criminal action. Payne now appeals claiming that the conviction rests on insufficient evidence in that the record does not contain evidence that he used a "deadly weapon" to assault George.

## Standard of Review

■ When properly raised by the defendant, the question of sufficiency arises before the case is put to the jury; the challenge is to the "submissibility" of the case. Therefore, any guilty verdict subsequently rendered by the jury is wholly irrelevant to the question of whether the case was sufficient to go to the jury at all. The Court's review is limited to determining whether the evidence is sufficient to persuade any reasonable juror as to each of the elements of the crime, beyond a reasonable doubt. *State v. O'Brien*, 857 S.W.2d 212, 215 (Mo. banc 1993). We reverse the conviction if a reasonable juror could not have found "each of the elements beyond a reasonable doubt." *State v. Grim*, 854 S.W.2d 403, 411 (Mo. banc 1993). A reasonable juror will not rest a conclusion upon sheer speculation. *Id.* at 414. However, when reviewing the evidence, we accept as true all evidence that supports a finding of guilt and all logical inferences reasonably drawn from the evidence. *O'Brien*, 857 S.W.2d at 215–16. "Questions of statutory construction are strictly a matter of law and are for the independent judgment of this Court."

*Murrell v. State*, 215 S.W.3d 96, 106 (Mo. banc 2007).

## Analysis

■ An assault in the second degree, a felony, is committed when one "[a]ttempts to cause or knowingly causes physical injury to another person by means of a deadly weapon or dangerous instrument." § 565.060.1(2). Furthermore, "any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action." § 571.015.1.[3] The term deadly weapon is narrowly described by the statute as "any firearm, loaded or unloaded, or any weapon from which a shot, readily capable of producing death or serious physical injury, may be discharged, or a switchblade knife, dagger, billy, blackjack or metal knuckles." § 556.061(10). The term "deadly weapon" is contrasted by the statute with the term "dangerous instrument," which is defined as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury." *Id.* at (9).

In the current case, the issue swiftly reduces to a question whether there was sufficient evidence to determine that the weapon used to stab George was a "dagger." We hold that the State failed to meet its burden. While the definition of "dagger" may be broad and encompass a huge variety of short, pointed weapons, it is not so broad as to encompass all items, which could have reasonably caused the

---

**3.** Here, despite the reference to "dangerous instruments" in the statutes, the jury instructions only describe the attack as being committed with a deadly weapon. The fact that the evidence might reasonably be construed as an assault with a dangerous instrument is immaterial. " 'The state is held to proof of the elements of the offense it charged, not the one it might have charged.' " *State v. Price*, 980 S.W.2d 143, 144 (Mo.App. E.D.1998) (quoting *State v. Keeler*, 856 S.W.2d 928, 931 (Mo.App. S.D.1993)).

instant injuries. Both the structure of the statute and the ordinary meaning of the words used by the statute guide our conclusion.

▇▇▇▇ First we examine the structure of the statute. Payne aptly points to recent Supreme Court precedent, which contrasts the statutory definitions of deadly weapon and dangerous instrument. "A deadly weapon, such as a gun, is inherently dangerous. [Dangerous instruments] become dangerous only when used in circumstances where they are readily capable of causing death or serious injury." *State v. Williams*, 126 S.W.3d 377, 384 (Mo. banc 2004). "Unlike a deadly weapon, a dangerous instrument is not necessarily designed for use as a weapon and may have a normal function under ordinary circumstances." *Id.* Deadly weapons are an enumerated set of objects. Their classification operates irrespective of their use. For instance, a firearm remains a firearm whether used to fire a projectile or used as a paperweight or cudgel. Dangerous instruments, on the other hand, can be virtually any item. They are not enumerated by statute and become dangerous instruments when used in a manner where the object is readily capable of causing death or other serious physical injury. Narrow descriptive words define one set of items and the particular manner of use defines the other set of items. Payne's use of a weapon to stab George does not make the unidentified weapon a dagger. While a dagger may be used to stab, the use of an item to stab does not make the item a dagger.

The mere fact that Payne used an item to attack George is insufficient evidence to conclude that the weapon in question was a dagger. The use of the item to injure another under these particular circumstances is not a determinative factor, if a factor at all, in determining if the weapon was in fact a dagger. Its use does not make the item a dagger or deadly weapon.

▇▇▇ Furthermore, if we were to apply the broad definition proposed by the State (any sharp, short item used as a weapon) we would render another term in the statute a near, if not total, superfluity. "The words in a statute are presumed to have meaning, and any interpretation rendering statutory language superfluous is not favored." *Schoemehl v. Treasurer of State*, 217 S.W.3d 900, 902 (Mo. banc 2007). The term "switchblade knife" is another form of deadly weapon described by the statute. § 556.061(10). If we were to employ the definition of dagger proposed by the State, then the term "switchblade knife" becomes surplusage.[4] Switchblade knifes, while primarily known by a retractable blade with an automated release mechanism, are typically, if not universally,[5] short, pointed, weapons. Under the State's preferred reading, all switchblade knifes would be daggers and the term "switchblade knife"

---

4. Section 571.010(18) defines switchblade knife as:

    any knife which has a blade that folds or closes into the handle or sheath, and
       (a) That opens automatically by pressure applied to a button or other device located on the handle; or
       (b) That opens or releases from the handle or sheath by the force of gravity or by the application of centrifugal force.
    Nevertheless, it seems unlikely that the definition in section 571.010 should be applied to

the use of the term "switchblade" in section 556.061. *See State v. Chowning*, 866 S.W.2d 165, 168 (Mo.App. S.D.1993) (noting that the definition of knife found in section 571.010 has no application to the use of the word "knife" in section 556.061).

5. Of course, one could imagine a switchblade knife with a retractable blade with a dulled point, unsuitable for stabbing. This hypothetical knife, however, would be an atypical specimen to say the least.

would be a nullity. The State's reading of the statute, which interprets dagger as any short pointed weapon, renders other portions of the statute superfluous. For this reason, the State's broad definition of dagger is not preferred.

■■■■■■ Our reading of the structure of the statute is reinforced by the ordinary meaning of the term "dagger." "The 'north star' of navigating interpretation of statutory law is to discern the General Assembly's intent by applying the plain and ordinary meaning of a statute's words." *State v. Bouse*, 150 S.W.3d 326, 329 (Mo.App. W.D.2004). "Statutory interpretation requires that the common meaning be applied to words." *Hancock v. Sec'y of State*, 885 S.W.2d 42, 49 (Mo.App. W.D.1994). "[A]bsent a statutory definition, the words used in the statute will be given their plain and ordinary meaning as derived from the dictionary." *Columbia Athletic Club v. Dir. of Revenue*, 961 S.W.2d 806, 809 (Mo. banc 1998). The dictionary is often a useful tool in determining the ordinary meaning of statutory language. Dictionary definitions are not, however, the final source of guidance in statutory interpretation.

■■■■ Multiple definitions make the task more difficult than opening a dictionary and applying the given definition. WEBSTER's NEW UNIVERSAL DICTIONARY (1976), defines a dagger as, "a short weapon with a sharp point used for stabbing; a poniard." *State v. Martin*, 633 S.W.2d 80, 82 (Mo.1982) (where the only issue was a minimum length for a knife to be considered a dagger). WEBSTER's II NEW COLLEGE DICTIONARY 284 (1995) defines dagger as "[a] short pointed weapon with sharp edges." The 3 OXFORD ENGLISH DICTIONARY 7 (1933), among others, uses a narrower definition, defining dagger as a "short stout edged and pointed weapon, like a small sword, used for thrusting and stabbing." MERRIAM WEBSTER's COLLEGIATE DICTIONARY 290 (10th ed.1994) defines dagger as "a sharp pointed knife for stabbing." BLACK's LAW DICTIONARY 465 (4th ed.1951), defines dagger as "[a]ny straight knife, worn on the person and capable of inflicting death, except pocket knife. Dagger is a generic term covering dirk, stiletto, poniard, etc." *People v. Syed Shah*, 91 Cal.App.2d 716, 205 P.2d 1081, 1083.

The dictionary definitions provide only moderate guidance to the case at hand, some describe dagger broadly as any short, pointed or sharp weapon, while others limit dagger to knife-like weapons, longer than four inches, used for stabbing.

The term "dagger," like most objects defined by statute, contains particular historic and technical connotations.

[D]irks or daggers were originally used in dueling and required blades locked into place to be effective ... they were designed for stabbing ... [the] failure to lock severely limits its effectiveness as a stabbing weapon because if the blade should hit a hard substance as a bone there is grave danger that the blade would close on the hand of the wielder.

*People v. Bain*, 5 Cal.3d 839, 851, 97 Cal. Rptr. 684, 489 P.2d 564 (1971). Daggers may be described as falling into one or more specific varieties including poniard, dirk, facon, military-issued combat knifes, stilettos, or rondel. When these historical archetypes, as well as the dictionary definitions, are examined, several attributes repeatedly appear including a fixed or locking blade, with sharpened edges, shorter than a sword and longer than an ordinary pocketknife, ranging between 4 and 25 inches, hilt, and designed with the intent to be used primarily for stabbing during combat. Of course, not each of these characteristics must be present for a submissible case and a court ought not

lightly take the issue out of the jury's prerogative. *See Chowning*, 866 S.W.2d at 168–69 (noting that a pocketknife with a blade of an undetermined length could constitute a dagger).

However, here, the question is not whether enough of the dagger attributes listed above are' present, but if any are present. At oral arguments, the State conceded that it produced no direct evidence of what was used to stab George. There was no evidence describing the object used as having a single or double blade, handle, its length, or its designed purposes. Nor was medical evidence offered to indicate the wounds were consistent with a particular type of weapon. All sharp items are not daggers, and here there was no evidence that the sharp item used was in fact a dagger.

While the Missouri Supreme Court has described "dagger" as a "short weapon with a sharp point used for stabbing," we do not believe that they intended that term to cover every possible short, pointed weapon. *Martin*, 633 S.W.2d at 81. In each case cited by the State where a court uses this definition to describe the weapon in question, the court was describing a knife of some variety. *See Id.* at 82 (knife between seven and eight inches long); *Chowning*, 866 S.W.2d at 168–69 (pocket knife of undetermined dimensions which was displayed to the jury but not contained in the record on appeal); *State v. Maynard*, 714 S.W.2d 552, 557 (Mo.App. W.D.1986) (long knife with a "very dagger-type blade"). While the definition was practical when applied to knives, it is overbroad when read without context of the particular factual situation to which it was applied.

"Dagger" is not a euphemism for any pointed or sharp object. Here, Payne may have employed a dagger to assault George. However, there is no evidence that a dag-

ger, rather than any number of short, pointed items was used (such as a screwdriver, pen, scissors, shard of glass, or sharpened tire pressure gage). As a result, the State presented insufficient evidence to support the conviction. In so holding, we note that it is not our intention to delineate the exact combination of characteristics necessary to define a dagger. Ideally, the legislature will provide additional guidance on the matter so that future trial and appellate courts will not be placed in the difficult situation of making such a determination.

At oral arguments, Payne conceded that it would be appropriate to resentence him for the lesser-included offense of assault in the third degree. Assault in the third degree is committed when one "attempts to cause or recklessly causes physical injury to another person." § 565.070.1(1).

> [When] a conviction of a greater offense has been overturned for insufficiency of the evidence, the reviewing court may enter a conviction for a lesser offense if the evidence was sufficient for the jury to find each of the elements and the jury was required to find those elements to enter the ill-fated conviction on the greater offense.

*O'Brien*, 857 S.W.2d at 220. Such is the case here. The jury determined that Payne committed each of the elements of assault in the third degree, a lesser-included offense of second-degree assault. *See State v. Dicus*, 727 S.W.2d 469, 472 (Mo. App. E.D.1987). Here, the only disputed element of assault in the second degree was the nature of the instrument used to attack George. Payne may, therefore, be sentenced for assault in the third degree.

### Conclusion

We reverse the judgment with instructions for the trial court to enter judgment

and sentence in accordance with this opinion.

All concur.