STATE of Missouri, Plaintiff–
Respondent,

v.

John R. ABORN, Defendant–Appellant.

No. SD 32212.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 2, 2013.

Samuel E. Buffaloe, Columbia, MO, for Appellant.

Karen L. Kramer, Jefferson City, MO, for Respondent.

MARY W. SHEFFIELD, J.

John R. Aborn ("Defendant") appeals from his conviction for unlawful use of a weapon. *See* § 571.030(1)(3).[1] Defendant claims there was insufficient evidence to support his conviction. We disagree and affirm Defendant's conviction and sentence.

### Standard of Review

■ "The same standard of review is followed in criminal cases tried by the court without a jury as in cases tried by a jury." *State v. Parrow*, 118 S.W.3d 629, 629 (Mo.App.S.D.2003). That is, our review is limited to determining "whether there was sufficient evidence from which a trier of fact could have found the defendant guilty beyond a reasonable doubt." *Id.* (quoting *State v. Mayfield*, 83 S.W.3d 103, 105 (Mo.App.S.D.2002)). In conducting this review, "[t]he evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *Williams v. State*, 386 S.W.3d 750, 754 (Mo. banc 2012) (quoting *State v. Belton*, 153 S.W.3d 307, 309 (Mo. banc 2005)). Furthermore, appellate courts do "not act as a super juror with veto powers, but give[ ] great deference to the trier of fact." *Id.* (quoting *State v. Miller*, 372 S.W.3d 455, 463 (Mo. banc 2012)) (internal quotation marks omitted).

### Factual and Procedural Background

David R. Aborn ("Victim") was Defendant's nephew. Victim's parents lived next door to a piece of property Defendant owned. There was a garage on Defendant's property, and Defendant stored a number of vehicles along the road. One route to Victim's parents' home was via a gravel road located beside Defendant's garage. For several years preceding this incident, Defendant and Victim's family had a disagreement about the use of the gravel road.

One Sunday, while Victim was visiting his parents, Defendant came to the home and confronted Victim about damage to one of the vehicles Defendant had stored on his property. Defendant believed Victim had damaged the windshield of the car and demanded Victim pay him for the damage. A fight ensued and Victim beat Defendant up. When Defendant left, he was angry, and Defendant stated, "he would get even."

The next Sunday, June 5, 2011, Victim visited his parents again. He left his parent's home at about nine o'clock in the evening and was driving his pickup truck with the radio on. The passenger-side window was up, and the driver-side window was down. After Victim passed Defendant's garage and as he was turning off the gravel road onto the main highway, Victim felt glass scatter on him. Victim looked at the passenger window and saw a perfectly round hole in the glass.

Victim called his mother and asked her to phone the authorities. Then he turned his vehicle around and parked it in the driveway to Defendant's garage. Victim yelled at Defendant and tried to get Defendant to come out of the garage and "settle this." When Defendant came to the door of the garage, he was talking on the phone. Victim heard Defendant tell

---

1. Unless otherwise indicated, all statutory references are to RSMo Cum.Supp. (2010).

the person on the other end of the line that he had to go because he had to shoot at Victim again.

Law enforcement officers arrived within a few minutes and arrested Defendant. The officers asked Defendant if there were any weapons in the garage. Defendant said there was a rifle in the corner. The officers located a rifle and a container of spent shell casings in the garage. While at the scene, the officers also spoke with witnesses and took pictures of the damage to Victim's truck. The damage to the window was not consistent with having been caused by a rock or a club. Given the direction the truck was traveling, the officers believed the projectile had come from somewhere near Defendant's garage.

Defendant was charged with unlawful use of a weapon and armed criminal action. Defendant was tried by the court on June 25, 2012. The judge found Defendant guilty of both counts.

Defendant filed a motion for new trial in which he claimed, *inter alia*, there was insufficient evidence to support his convictions because there was no evidence the window was broken with a firearm. At the sentencing hearing when addressing the motion for new trial, the trial judge stated, "I think you're probably right, on the armed criminal action issue, so I'm going to grant your motion on that and vacate that." The trial judge overruled the motion for new trial on the count involving the unlawful use of a weapon. The trial judge then sentenced Defendant to four years in the Missouri Department of Corrections. This appeal followed.

### Discussion

In his sole point on appeal, Defendant argues the evidence was insufficient to support his conviction for unlawful use of a weapon. Specifically, he claims the evidence did not demonstrate the instrument used to break the window was a firearm because the law enforcement officers did not find a bullet and the trial court vacated the armed criminal action conviction. We disagree.

As charged in this case, "[a] person commits the crime of unlawful use of weapons if he or she knowingly . . . [d]ischarges or shoots a firearm into a . . . motor vehicle." § 571.030.1(3). A firearm is "any weapon that is designed or adapted to expel a projectile by the action of an explosive[.]" § 571.010(8). A conviction under this statute does not require the State to produce the weapon in evidence in order to prove the weapon was a firearm. For example, in *Parrow,* the court found there was sufficient evidence the weapon was a firearm where a witness who was familiar with firearms testified the weapon sounded like a revolver. 118 S.W.3d at 631. Similarly, in *Williams,* the Supreme Court of Missouri held there was sufficient evidence the firearm was readily capable of lethal use where the victim testified the defendant pointed a shotgun at her and threatened to kill her. 386 S.W.3d at 754–55. In other words, a defendant's statements at the time of the crime may be used to support an inference that the weapon meets the applicable statutory definition.

In the present case, the State presented sufficient circumstantial evidence from which a reasonable trier of fact could infer the object Defendant used to cause the damage to Victim's car was a firearm. There was a perfectly round hole in the broken window and the damage was inconsistent with having been caused by a rock or a club. A rifle was available to Defendant in his garage and there were spent shell casings. Furthermore, the law enforcement officers believed the projectile came from the direction of Defendant's

 

garage. Finally, when Victim arrived at Defendant's garage to confront Defendant, he overheard Defendant saying he was going to have to shoot at Victim again. From this statement, it would be reasonable to infer Defendant had previously shot at Victim. The nature of the damage to the truck window and the availability of a rifle, when combined with Defendant's statement that he was going to have to shoot at his nephew again, provided sufficient evidence from which a reasonable trier of fact could infer Defendant used a firearm to cause the damage to the window of Victim's truck.

In support of his contrary conclusion, Defendant suggests this case is similar to *State v. Payne*, 250 S.W.3d 815 (Mo.App. W.D.2008). In *Payne*, the victim's injuries were the only evidence from which inferences could be made regarding the type of weapon used. *Id.* at 817. Unlike the situation in *Payne*, however, the prosecution in this case also introduced evidence of Defendant's statement shortly after the crime. That statement supported the inference that the object used to break the window was a firearm. Thus, *Payne* is not similar to the present case.

█ Defendant also argues Victim's testimony about Defendant's statement is mistaken because Victim was too far away to have heard clearly. This argument ignores the standard of review. "Determination of the reliability or credibility of witnesses lies with the trial court." *Parrow*, 118 S.W.3d at 631. The trial court was entitled to believe Victim heard Defendant correctly, and this Court will not second-guess that determination on appeal. Defendant's arguments based on the fact that the law enforcement officers never found a bullet and Victim's admission that he did not hear a gunshot also ignore the standard of review. Those facts are con-trary to the verdict and must be disregarded. *Williams*, 386 S.W.3d at 754.

Defendant's sole point is denied.

### Decision

The trial court's judgment is affirmed.

GARY W. LYNCH and DON E. BURRELL, JJ., concur.