

# In the Missouri Court of Appeals
# Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED100154 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | |
| | ) | |
| DONNELL RIVERS, | ) | Honorable Michael P. David |
| | ) | |
| Defendant/Appellant. | ) | Filed: September 2, 2014 |

## Introduction

Donnell Rivers (Appellant) appeals from the trial court's judgment entered upon a jury verdict convicting him of first-degree murder, three counts of first-degree assault, four counts of armed criminal action and one count of unlawful use of a weapon. We affirm.

## Factual and Procedural Background

The State charged Appellant with first-degree murder, three counts of first-degree assault, four counts of armed criminal action, one count of unlawful use of a weapon, one count of second-degree burglary and one count of misdemeanor stealing. The evidence presented at trial, viewed in the light most favorable to the verdict, is as follows.

Larazus Baber (Baber) and Cynthia Williams (Williams) lived together in a one-bedroom apartment on St. Louis Avenue. Appellant, whose nicknames were "Four" and

"Fo," stayed in an apartment with his brother and mother, Eunice Rivers (Rivers), directly across from Baber and Williams. The two apartments faced each other. Baber's and Williams's living room and bathroom were situated in the front of the apartment while the bedroom was in the back corner of the apartment.

On December 19, 2010, Baber left the apartment around 8:00 p.m. to pick up Williams from work. When they returned to the apartment, Baber saw Appellant run from the doorway of their apartment and duck into Rivers's apartment. Baber's and Williams's door was forced open, the furniture was moved around, and their television, game console and some knickknacks were missing. When they exited the apartment, Rivers's door was open and Baber could see his television sitting on Rivers's couch. Williams called the police, who responded to the scene. Police officers knocked on Rivers's door in an attempt to arrest Appellant but Rivers refused to open the door or to cooperate with the police. The police placed a wanted for second-degree burglary on Appellant.

Later that evening, Baber's friend Carlos Rogers (Rogers) and Williams's friend Wanda Rodgers (Rodgers) came to the apartment. The friends were sitting in the living room talking and socializing when they heard people arguing outside.

Rodgers and Rogers each testified they were familiar with Appellant, whom they knew as Fo, had spoken with him prior to that evening, and they recognized Appellant's voice as being one of the persons yelling outside.

Baber testified he heard two people arguing outside and recognized the voices as belonging to Appellant and Rivers. Baber testified he had regular contact with Appellant, seeing him practically every day, and had spoken with him in the past. Once the yelling

2

started, Baber went into the bathroom and looked out the window. Baber saw Rivers and Appellant with two other people standing outside between the two apartments. Appellant was pacing. Baber watched as Appellant walked up to Baber's and Williams's living room window, looked through a broken part of the blinds and then backed up. Baber then saw Appellant's arm and the tip of a gun barrel. Baber yelled for everyone to get down and Appellant began shooting inside the apartment. During the shooting, Baber stayed in the bathroom while Rodgers and Rogers hid in the kitchen.

Baber testified he saw Williams coming toward him after the shooting started. Baber stated the shots then changed direction, moving from the front of the apartment to the side towards the bedroom window. While Appellant was moving around the side of the house, Williams, who was in the bedroom, said, "Oh, baby, I'm hit," to Baber. Williams died from a single gunshot wound to the chest and abdomen.

The jury convicted Appellant of first-degree murder, three counts of first-degree assault, four counts of armed criminal action and one count of unlawful use of a weapon, and acquitted him of burglary and stealing. The court sentenced Appellant to life without the possibility of probation or parole for murder and fifteen years' imprisonment for each of the remaining eight counts, with each sentence to be served consecutively. This appeal follows.

## Discussion

### *Sufficiency of the Evidence*

In his first point, Appellant argues the State failed to present sufficient evidence to support his conviction for first-degree murder, in that the evidence did not support a reasonable inference that Appellant deliberated or coolly reflected for any length of time

before shooting into the apartment. Appellant asserts the evidence only supports an inference that he was acting out of the influence of a violent anger or passion.

On review of a challenge to the sufficiency of the evidence, this Court is limited to determining whether the evidence was sufficient for a reasonable person to find Appellant guilty beyond a reasonable doubt. State v. Rousan, 961 S.W.2d 831, 841 (Mo. banc 1998). We view the evidence, and all reasonable inferences drawn therefrom, in the light most favorable to the verdict. Id. It is the jury's duty to assess the reliability, credibility, and weight of the witness's testimony. State v. Giles, 949 S.W.2d 163, 166 (Mo. App. W.D. 1997).

A person commits first-degree murder when he "knowingly causes the death of another person after deliberation upon the matter." Section 565.020.1.[1] Deliberation is defined as "cool reflection for any length of time no matter how brief[.]" Section 565.002(3). Deliberation occurs when the actor has time to think and intends to kill the victim for any period of time, no matter how short. State v. Hudson, 154 S.W.3d 426, 429 (Mo. App. S.D. 2005). Deliberation may be inferred from the circumstances surrounding the crime, including when there is evidence of a prolonged struggle, multiple wounds or repeated blows. Id.

The evidence indicated that on the night of the shooting, Baber had identified Appellant as the person who had burglarized his home, the police went to Rivers's home to arrest Appellant, and the police placed a wanted for Appellant in connection with the burglary. Shortly before the shooting, Appellant was outside the apartment arguing with Rivers. During the argument, Appellant stopped pacing, walked over to Baber's and Williams's apartment, looked into the apartment through a broken part in the living room

---

[1] All statutory references are to RSMo 2006, unless otherwise indicated.

4

blinds, backed up, and began shooting into the apartment. Appellant moved from the front of the apartment, along the side of the building to the bedroom where he continued to shoot. The manner in which Appellant fired multiple shots at the victims from different locations denotes cool reflection. Furthermore, the events leading up to the shooting create a reasonable inference that Appellant acted with the intent to seek revenge or silence the victims. The State produced sufficient evidence from which a reasonable trier of fact could find Appellant guilty beyond a reasonable doubt of first-degree murder. Appellant's Point I is denied.

*Exclusion of Evidence*

In his second point, Appellant argues the trial court erred in granting the State's objection and in excluding evidence at trial related to Baber's dispute with Williams's husband, Duke.

During his cross-examination of Baber, Appellant sought to question Baber about his encounters with Duke to show that Baber had "ongoing disputes with other people." The court allowed Appellant to make an offer of proof regarding this evidence. Baber testified that while he was living with Williams, she was married to Duke. Baber stated he knew Duke and that he used to hang out with him. Baber testified that months before the shooting, Duke broke Baber's windshield. Baber denied they had a "feud" following the incident and that Duke never returned after Baber called the police. The court sustained the State's objection to the testimony.

Appellant argues the trial court erred because the evidence was relevant and material to show that Baber had an ongoing dispute with Duke and that "Duke was a suspect of this shooting considering his previous destruction of property at their

5

apartment." Appellant contends he was prejudiced by the exclusion of this evidence because it deprived him of the full opportunity to present his defense that Baber had violent ongoing disputes with others who would have motive to commit this shooting.

The trial court has broad discretion in the determination of the admissibility of evidence and we will not reverse the court's ruling absent an abuse of discretion. State v. Mozee, 112 S.W.3d 102, 105 (Mo. App. W.D. 2003). The trial court abuses its discretion "when its ruling is clearly against the logic of the circumstances before it and when the ruling is so arbitrary and unreasonable as to shock our sense of justice and indicate a lack of careful consideration." State v. McGowan, 184 S.W.3d 607, 610 (Mo. App. E.D. 2006). We review the trial court's admission or exclusion of evidence for prejudice and not mere error, and will affirm the court's ruling unless it was so prejudicial that it deprived the defendant of a fair trial. Mozee, 112 S.W.3d at 105.

"To be admissible, evidence that another person had an opportunity or motive for committing the crime for which a defendant is being tried must tend to prove that the other person committed some act directly connecting him with the crime." Rousan, 961 S.W.2d at 848. The evidence must directly connect the other person with the *corpus delicti* and tend clearly to point to someone other than the accused as the guilty person. Id. "'Disconnected and remote acts, outside the crime itself cannot be separately proved for such purpose; and evidence which can have no other effect than to cast a bare suspicion on another, or to raise a conjectural inference as to the commission of the crime by another, is not admissible.'" Id. quoting State v. Umfrees, 433 S.W.2d 284, 287 (Mo. banc 1968).

The evidence that Duke had broken Baber's windshield months before the shooting did not prove that Duke committed any act connecting him to the murder and did not constitute a direct connection between Duke and the murder. The windshield incident was a disconnected, remote act that did nothing but cast a bare suspicion on Duke. There was no evidence that Duke engaged in any act directly connecting him to the shooting. The trial court did not err in excluding this evidence. Appellant's Point II is denied.

## Conclusion

The judgment of the trial court is affirmed.

Sherri B. Sullivan

Sherri B. Sullivan, P.J.

Mary K. Hoff, J., and
Philip M. Hess, J., concur.